to acquiesce and abandon his right of appeal. Sims v. Jeter, 129 La, [262] 263, 55 So. 877, and authorities there cited."

In Parker v. Harvey, La.App., 164 So. 507, 509, the court said: "The right of an aggrieved litigant to take and prosecute appeal is guaranteed by the Constitution, and exists in all cases, otherwise appealable, where the party has not confessed judgment or acquiesced in same by voluntarily executing it. Code of Practice, art. 567; Lochbaum v. Southwestern Box & Lumber Mfg. Co., 121 La. 176, 46 So. 201."

In the instant case, after the delay of ten days had elapsed within which the appellant was entitled to take a suspensive appeal, there was no other legal method by which it could suspend the execution of the judgment. Therefore, the members of the School Board were compelled to comply with the judgment or otherwise be subject to a penalty for contempt of court. It was only in obedience to the mandate of the court that the Board restored the relator to her position and salary. The fact that the Board devolutively appealed from the judgment of the district court shows that there was no intention on the part of the respondent and appellant to abandon either the case or its right to an appeal. Certainly, it cannot be said that there was an unconditional, voluntary, and absolute acquiescence in the judgment on the part of the appellant and that it intended to acquiesce in and abandon its right to an appeal.

For the reasons assigned, the motion to dismiss the appeal is overruled.

197 So. 510

## ALEXANDER v. JACKSON.

No. 35742.

June 28, 1940.

Warren Simon, of New Orleans, for plaintiff and appellee.

Benjamin Washastrom, of New Orleans, for defendant and appellant.

FOURNET, Justice.

This suit for divorce was instituted by the husband under the provisions of Act No. 430 of 1938. The wife answered, admitting that they had been separated for more than two years, but averred that since the separation had not been caused by her fault she was entitled to alimony at the rate of $33 a month. In a supplemental answer she asked that the amount be fixed at $59 a month and, also, that she be awarded $150 with which to pay the attorney who represented her in this case. From the judgment of the lower court granting the divorce as prayed for, but rejecting her claim for alimony, the defendant has appealed.

While this suit was pending on appeal here, the defendant filed a motion to remand the case, alleging that on November 27, 1939, after judgment had been rendered herein but before the judgment was signed, the defendant, through her counsel, in the absence of the trial judge "obtained leave from the Minute Clerk" to file a motion for a new trial not later than December 4, 1939; that on the 2nd of December

she did file a motion for a new trial but that the trial judge, not having been apprised of the action of the minute clerk in this matter, had signed the judgment on December 1. The object of the motion is practically identical with that set forth in the motion for a new trial, i. e., to introduce newly discovered evidence of disinterested persons, the effect of which would be the refutation of the testimony of plaintiff's witnesses. This motion was referred to the merits in order to ascertain whether "it [is] not possible to pronounce definitively on the cause, in the state in which it is * * *." Article 906, Code of Practice. (Brackets ours.) La.Sup., 197 So. 137.

According to the admitted facts of the case, the plaintiff, having lived separate and apart from the defendant for a period of more than two years, is entitled to a divorce under the provisions of Act No. 430 of 1938, thus leaving in controversy only the wife's claim for alimony, to which she is entitled under the express provisions of the Revised Civil Code, Article 160, as amended by Act No. 27 of the 2nd Extra Session of 1934, if the separation did not occur through her fault.

Although the testimony of the plaintiff and the defendant are in conflict, we, nevertheless, have concluded that a fair preponderance of the evidence is in the defendant's favor, and, consequently, it is not necessary to remand the case to the lower court.

One of the principal conflicts touches on the cause of the separation. The husband states that the cause leading up to the

separation was the refusal of defendant's brother who, with his wife, was living with the plaintiff and defendant, to work and assist in maintaining a household. He also states that his wife left the domicile without cause, burning his clothes and taking the furniture with her.

The wife's version of the cause that led to the separation was the husband's refusal to return to the marital domicile after she discovered him at an entertainment with another woman, although he had refused to take her there. She stated that she continued to live at the Urquhart Street address until she was notified by her landlord in July of 1935 to vacate because of non-payment of the rent. She admitted taking a bedroom set and radio with her, but stated she sent the remainder of the furniture to the home of her husband's mother on North Rocheblave Street, where he was then living. She denied positively having burned any of the plaintiff's clothing.

We are not favorably impressed by the testimony of the plaintiff, nor with that of his witnesses. His testimony has not been corroborated in any material or pertinent aspect. Moreover, in spite of the fact that his wife denied the allegation in his petition that they were separated in October of 1934 while living on North Dorgenois Street and her averment that the separation took place in July of 1935 while they were living on Urquhart Street, on direct examination he persisted in the correctness of his allegation and it was not until on cross-examination that he admitted that the separation took place while they were living on Urquhart Street. In this respect the wife was corroborated by all of the witnesses, those of the plaintiff as well as her own.

In an attempt to establish that he was not at fault, the plaintiff offered the testimony of his sister, Osby Nash; his adopted brother, William G. Ishen; and James M. Hill, a friend. His sister stated that she lived two or three blocks away from the plaintiff and defendant at the time the defendant left her brother but, when asked how she knew defendant had left the marital domicile, she said "He came home and told us of it and the furniture was gone." She also testified that after being informed of the incident she went to the house and discovered that the furniture had been removed and that some of the plaintiff's clothing had been burned, but she could not say where the furniture was or who had burned the clothing. The adopted brother stated that he knew nothing about the case except what had been told him. The testimony of the friend is equally unimpressive for, although he stated that he was well acquainted with the plaintiff and the defendant, living only two or three blocks from the Urquhart Street address, and that he knew she had left her husband, he definitely demonstrated on cross-examination that his conclusions were unfounded.

The defendant's testimony was not only corroborated in part as stated above, but the same was not impeached in any respect by plaintiff's witnesses, or otherwise. Moreover, she was corroborated by the testimony of her stepmother, who testified

positively that the defendant had moved out of the house only after she was notified by the landlord to vacate; that the furniture was moved by Albert R. Perez who left a bedroom set and radio at her (the stepmother's) home, where defendant moved, and took the remainder thereof to the home of plaintiff's mother on North Rocheblave Street. She also stated that the plaintiff did not remain in the house after the defendant moved therefrom, as testified to by him.

Having reached the conclusion that the defendant was not at fault, she is entitled to alimony at the discretion of the court "out of the property and earnings of her husband * * * which shall not exceed one-third of his income." Article 160, Revised Civil Code, as amended.

The testimony shows that the plaintiff is employed as a mail carrier at a salary of $160 a month and that the defendant has been in poor health ever since she and the plaintiff were first married, due to a miscarriage. The wife testified that, at the time this suit was tried she was working and earning a weekly salary of $3 net; that in order to secure proper medical attention and meet her necessary expenses an additional amount of between $6 and $8 a week would be required. Under the circumstances, there being no children to support, we have concluded to fix the rate of the alimony at $30 a month.

The defendant has apparently acquiesced in the ruling of the trial judge refusing to allow testimony in support of her claim for attorney fees for the assigned reason that this claim would have to be brought up in a separate suit, as the matter was not urged here either orally or in brief.

For the reasons assigned, the judgment of the lower court in so far as it rejects the demands of the defendant for alimony is set aside and it is now ordered, adjudged, and decreed that the plaintiff, John G. Alexander, pay alimony to the defendant, Eloise Jackson, at the rate of $30 a month, payable monthly, and that in all other respects the judgment is affirmed, plaintiff to pay all costs in both courts.