**65 So.2d 109**

**RICHARDS v. GARTH.**

**No. 40771.**

March 23, 1953.

Rehearing Denied April 27, 1953.

Henican, James & Cleveland and Murray F. Cleveland, New Orleans, for defendant-appellant.

Charles E. Richards, New Orleans, for plaintiff-appellee.

FOURNET, Chief Justice.

The defendant, Mrs. Florence Garth Richards, is appealing from a judgment granting her husband, Julian S. Richards, a divorce on the ground of two year separation; decreeing that she was "at fault at the time of the separation, and * * * not entitled to permanent alimony or pension under the provisions of Article 160 of the [LSA] Civil Code;" and limiting her claim for alimony pendente lite to $100 a month from August 9, 1951, the date on which the suit for divorce was filed. The rights of the parties with respect to the partition of the community, an accounting, and attorney fees was specifically reserved and form no part of this proceeding.

Under the express provisions of the LSA Civil Code, a wife who has not a sufficient income for her maintenance pending a suit for divorce is entitled to "a sum for her support, proportioned to her needs and to the means of her husband." Article 148. See Abrams v. Rosenthal, 153 La. 459, 96 So. 32; Anzalone v. Anzalone, 182 La. 234, 161 So. 594; Bowsky v. Silverman, 184 La. 977, 168 So. 121; Coney v. Coney, 215 La. 667, 41 So.2d 497; and Smith v. Smith, 217 La. 646, 47 So.2d 32. But where the husband secures a divorce against his wife on the ground of living separate and apart for a certain legal period and the wife is in necessitous circumstances and "has not been at fault," the court may allow her, in its discretion, alimony not to exceed one-third of his income. Article 160. See, Player v. Player, 162 La. 229, 110 So. 332; Bernard v. Gonzales, 170 La. 473, 128 So. 281; Fortier v. Gelpi, 195 La. 449, 197 So. 138; Abbott v. Abbott, 199 La. 65, 5 So.2d 504; Wilson v. Wilson, 205 La. 196, 17 So.2d 249; Reich v. Grieff, 214 La. 673, 38 So.2d 381. See, also, 11 Louisiana Law Review 401.

Appellant's counsel concede the divorce was properly granted but contend the trial judge in finding the wife at fault and denying permanent alimony erroneously substituted his personal views and feelings as to the propriety of her actions with other men for those of the husband, who testified their trouble arose solely over financial difficulties. Counsel's position is that the "proximate" cause of the separation was (1) the excessive drinking of the husband and his resultant abusive and embarrassing treatment of her, and (2) in any event, the separation was by mutual consent and agreement. The appellant also seeks to have the alimony pendente lite award increased from $100 to $500 a month.

While at the time the separation occurred the "status" of the marriage had apparently reached the point where the parties were more or less going their separate ways, the record nevertheless shows unmistakably that the separation be-

tween them as husband and wife was not by mutual consent or agreement, as claimed in the alternative contention of the appellant. The fact is that the wife left the matrimonial domicile to go to her mother's home in Virginia and never returned, in violation of her marital duties under our civil law which requires that she "live with her husband and * * * follow him wherever he chooses to reside". Article 120 of the LSA Civil Code. Consequently, she cannot claim to have been free from fault unless she can establish that her husband's treatment of her rendered it unbearable for her to live with him. Pitre v. Burlett, 190 La. 127, 182 So. 123; Alexander v. Jackson, 195 La. 808, 197 So. 510; Lloveras v. Reichert, 197 La. 49, 200 So. 817; Abbott v. Abbott, 199 La. 65, 5 So.2d 504; White v. Broussard, 206 La. 25, 18 So.2d 641; Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43; Reich v. Grieff, 214 La. 673, 38 So.2d 381; Felger v. Doty, 217 La. 365, 46 So.2d 300; and Creel v. Creel, 218 La. 382, 49 So.2d 617.

In our opinion, the evidence discloses there was nothing in the plaintiff's treatment of his wife that warranted her leaving the matrimonial domicile. Mrs. Richards' contention that the separation was caused by her husband's excessive drinking and abuses while under the influence of liquor does not impress us. Without going into detail, we think it sufficient to say that the plaintiff and defendant were obviously partners in drinking and in partying. The four specific acts of cruelty she claimed to have suffered at his hands all lack corroboration. Further, the evidence discloses her version of each is either erroneous or greatly magnified. All of these incidents occurred several months prior to the separation when the plaintiff and defendant were on parties and drinking together. The only witness called by Mrs. Richards to corroborate her on any phase of this case did admit being present on one of these four occasions, but she gave scant details and her statement that the plaintiff's remarks to the defendant were "humiliating," without more, is only a conclusion on her part. This same witness, it is significant to note, also testified that to her knowledge Mr. Richards had never addressed his wife in an abusive manner, had never slapped her, and that what she (the witness) termed his "belligerency" while drinking was nothing more than "just bickering."

According to the facts developed during the trial, the plaintiff and defendant, soon after their marriage in Charlottesville, Virginia, on August 31, 1946, established their matrimonial domicile in New Orleans. They were living rent free in an apartment at 612 Dumaine street owned by the plaintiff's father at the time of their separation in the early part of 1949. It is apparent from the evidence that the defendant thought she was marrying the Richards millions and found, instead, that her father-in-law had established for his son "spendthrift" trusts, the income from which could

not be withdrawn by him. They both secured employment and she began almost immediately to nag and harass him about his small salary, ridiculing and degrading his efforts to earn a living in front of their friends and in front of his fellow employees; she referred to his employment with Eastern Airlines as a "jerky job." Despite their meager earnings at the beginning of the marriage ($250), she spent at least $100 a month of that on clothes for herself and, in addition, caused a one room apartment occupied by them to be decorated at a cost of $500, not including furniture. At the time their combined earnings increased to $300 she began spending approximately $150 for clothes, and when their earnings finally reached $350 a month, she was spending so much for clothes she was concealing the bills from her husband by having them sent to the office where she worked. After she left the plaintiff, department stores in the city presented him with bills incurred by her for clothing totalling in excess of $1,000, which he was compelled to pay.

The record is replete with evidence disclosing that the wife's unhappiness, caused by her husband's inability to take her wherever she wanted to go and to spend on her the money to which she thought she was entitled, brought the marriage to the impasse that resulted in both of them going their separate ways. Her attitude, according to her own testimony, was that although still married to and living in the

same house with her husband she had the right to do what she pleased with anyone else. And it is apparent she did just that.

According to Mrs. Richards, the trouble between the parties began at the time she went to work for Chicago & Southern Airlines in October of 1948, some six or eight months prior to the separation. She was spending time out in town visiting with friends overnight and for longer periods, she began attending the races without her husband, stopping for cocktails along Royal street on her way home from work (a practice she censures in him), and meeting other men for dinner and cocktails. She went on fishing trips with mixed crowds without her husband (and apparently without his knowledge), on one such occasion spending a week at Grand Isle on a large yacht and on another spending the night alone at a fishing camp with a young man and the colored caretaker after all other members of the party had returned to the city. She went to Havana with one of the young ladies at Chicago & Southern Airlines. There is also evidence that she met a named man in a hotel room without her husband's knowledge or consent. Finally, a month before the separation, she went to Miami by plane on a ticket purchased in the name of "Mrs. Owens." Her uncorroborated testimony is that she went to Miami with a "Mrs. Owens," and that this "Mrs. Owens" had secured both of their tickets in her name. She does not explain who "Mrs. Owens" is supposed to be and

she did not produce "Mrs. Owens" to corroborate this phase of her testimony. So far as the record reflects, there is no Mrs. Owens within her circle of friends; she is not mentioned in any other connection. Also, the defendant, who was not then working and admittedly spent all "and possibly more" of the money she earned on clothes, does not explain the source from which she secured the money to finance this trip to Miami and her stay there of a month. It was on the day following her return from Miami that she left for her mother's home in Virginia and never returned.

■■ In arguing before this court that we should not follow in the footsteps of the trial judge in championing the feelings and rights of the husband, counsel for appellant overlooks the fact that the wife is the one who breached the marital contract by deserting her husband and that it was incumbent upon her to prove, by a preponderance of the evidence, that her departure from the matrimonial domicile was for just cause. This burden, as just demonstrated, she has totally failed to discharge. Furthermore, it is obvious from the following excerpts from the husband's testimony that he was not only most charitable in his testimony concerning his former wife, but that he was well aware of her actions and felt powerless to stop her. Explaining why he did not know Mrs. Richards had actually left him until he was told upon calling her mother's home several days later that

she was there, he said: "* * * she left so often that one more time didn't faze me until I really knew where she was. * * * She just wanted to go and she just left—I mean that's it—wherever and with whomever she cared to." Later he says: "* * * she was coming and going when she pleased. I couldn't pin-point her actions. I really couldn't."

· The trial court therefore correctly denied Mrs. Richards' right to permanent alimony.

■ The appellant's contention that the alimony pendente lite award of $100 a month, when added to her income, is not sufficient for her maintenance and should be increased to $500, the amount originally sought—and particularly since the plaintiff has, in addition to his earned salary, large sums from trusts established by his father—is not supported by the record.

We have the appellant's uncorroborated testimony that it costs her $525 a month to live, itemized as follows: $110, apartment; $90, food; $25, furniture; $25, laundry and cleaning; $25, medical and dental; $25, recreation; $75, miscellaneous. At the time the suit was instituted, however, and for some time prior thereto, the plaintiff had been sustaining herself on her earnings of $45 a week as an assistant buyer for a store in Baltimore, Maryland—her outstanding indebtedness at the time of the trial amounting to only $72. Her statement that these earnings were not sufficient for her maintenance and were supplement-

ed by assistance from her stepfather and mother is uncorroborated and unimpressive. She does not set out or prove any amounts received by her from this source. The two outstanding obligations incurred by her in connection with this suit—$250 to finance the trip to New Orleans, borrowed from her employer, and $500 for attorney fees, borrowed from a bank in Baltimore—were not for her sustenance.

While it is true, as pointed out above, the plaintiff is the named beneficiary in several trusts established by his father, these are so-called spendthrift trusts, the income from which has been withheld from him and forms the basis for the demand for an accounting and partition of the community, with respect to which all rights have been reserved.

For the reasons assigned, the judgment appealed from is affirmed.