316 So.2d 829 (1975)
Richard CARTER
v.
Olivia Lewis CARTER.
No. 10316.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*830 J. Arthur Smith, III, Baton Rouge, for defendant-appellant.
William L. Kimball, Port Allen, for plaintiff-appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
Richard Carter was granted a final divorce from his wife, Olivia Lewis Carter, on the ground of two years separation under the authority of LSA-R.S. 9:301. The wife's reconventional demand for alimony was denied on the ground that she failed to prove that she had not been at fault as required by Article 160 of the Civil Code.
The wife has brought this appeal from the judgment denying her claim for alimony.
Article 160 of the Civil Code, as amended, provides in pertinent part:
"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
* * * * * *
"2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time;
"* * *"
The divorce is not at issue and the only question before us is whether the wife has borne the burden of proof of freedom from fault so as to be entitled to alimony. The burden of proof "with reasonable certainty" is upon the wife. Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir. 1970), writ refused 257 La. 168, 241 So.2d 530 (1970); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Richards v. Garth, 223 La. 117, 65 So.2d 109 (1953); Hawthorne v. Hawthorne, 214 La. 905, 39 So.2d 338 (1949); Smith v. Smith, 287 So.2d 815 (La.App. 4th Cir. 1974); Kratzberg v. Kratzberg, 286 So.2d 174 (La.App. 4th Cir. 1973).
From its very nature this is a heavy burden to cast upon a pleader and must be imposed within reasonable limitation to avoid injustice. It calls for proof of a negative. This is always difficult and in many cases impossible, especially when the implications calling for disproof are non-specific broad generalities. Unless the wife is informed by the husband's answer to her petition for alimony by some specific allegation of fault on her part, she is put in the impossible position of disproving every conceivable fault which could bring about a separation between married persons. It is contrary to all reason that a wife be required to come to court prepared to disprove any and every possible accusation which might be leveled against her during the course of *831 the trial. That is the situation we have here on the pleadings upon which the case went to trial.
The wife, Mrs. Carter, alleged in her petition in reconvention:

1.
"The defendant-in-reconvention has an income sufficient to pay permanent alimony to the plaintiff-in-reconvention in the sum of Two Hundred Seventy-Five and no/100 Dollars ($275.00) per month, and the plaintiff-in-reconvention was not at fault in connection with the separation in fact, and does not have sufficient means for her maintenance."
To this the husband merely answered:

1.
"Defendant in reconvention denies the allegations of fact contained in Paragraph 1 of the reconventional demand.
"In further answer thereto, defendant in reconvention alleges to affirmative defense of mental and physical cruelty being committed against him by plaintiff in reconvention." [sic]
There are countless ways by which "mental and physical cruelty" can be inflicted. Shall the wife be required to prove her innocence of every conceivable act of cruelty to be entitled to alimony merely because her husband has accused her in such broad and unspecific terms? The answer is obvious. The burden of proof of no fault therefore must be applied with reason and fairness.
The record before us on this appeal reveals that the husband, plaintiff, testified in person and offered two witnesses to prove the separation and their living apart for more than two years. There was no dispute of this fact and there was no cross examination of the husband and his witnesses.
The husband then rested his case. It was not until the wife, plaintiff in reconvention, began the presentation of her case that the alleged faults of which she was accused were made known.
The husband, called on cross examination by the wife's counsel, admitted that he left his wife and when questioned for reasons he complained in substance that she did not treat him as a husband and that he had to come home after work and cook his own meals and wash his own clothes. He accused her of "staying out" on occasions without letting him know where she was. He did not accuse her of staying out overnight.
Later, during the course of the trial, it developed that the husband had suspicions about his wife having a boyfriend. A photograph which he had found in her possessions was offered in evidence in support of his suspicions. The photograph is of the wife with a man posed behind her looking over her shoulder. There is not the slightest indecency nor impropriety indicated by the photograph. The parties are fully clothed and there is nothing in their appearance to indicate an improper relationship. The wife disclaimed knowledge of the identity of the man in the photograph and said that it was made several years prior to the trial. This denial of knowledge of identity of the subject does indeed raise doubt of her truthfulness, but it proves nothing, and at most raises a suspicion that she is keeping something from her husband.
One witness, a friend of the wife, testified of having been told by her that her husband did not satisfy her sexual needs and inferred that she might have sought satisfaction out of the home. This inference was merely the opinion of the witness and has little or no probative value. There was also some testimony to the effect that during an argument and the husband's threat to leave that the wife said in substance that he could go and she would soon have another man in the house. We interpret *832 this merely a boastful remark under the emotion of a marital disagreement. Beyond this there is nothing upon which the conclusion can be justified that the wife was guilty of infidelity.
The cooking and washing issue was the one about which the husband made the most complaint. His proof of his wife's fault in this respect is his own testimony and that of two friends who testified that Carter told them immediately after the separation that his wife had put him out and that she did not cook and wash for him and that he just got tired and left. One of the witnesses said Carter told him that his wife would not cook and wash but that he had no personal knowledge of this, but that on one occasion he did see Carter cooking in his home. This testimony is, except for the latter statement, mere repetition of self-serving declarations and should be treated accordingly.
Mrs. Carter denied the foregoing accusations and offered two witnesses who testified that they had often visited in the Carter home and had personal knowledge that the wife did prepare meals and was a good housekeeper.
Mrs. Carter was a minister of a small church congregation and devoted much time to her ministerial duties which involved visitation of persons in their homes. An inference of some impropriety was drawn by the husband from one occasion when a man was alleged to have given her an unspecified sum of money. This, she explained, was related to some church matter. Without more facts concerning the incident we must acknowledge the probability that her explanation was true.
There is testimony to the effect that Mrs. Carter had sustained a leg injury about two years before the separation which later necessitated surgery and at the time of the separation she was wearing a cast. Whether or not she was disabled to the point of incapacity to perform the duties of housekeeper and wife, is not clearly proven and we doubt that she was for a protracted time so incapacitated.
Fault contemplated by Article 160 of the Civil Code is behavior by acts or omission of a serious and substantial nature amounting to a violation of the marital obligaions. It must be such conduct that would be an independent contributory or proximate cause of the separation. Fulmer v. Fulmer, 301 So.2d 622 (La.1974); Vicknair v. Vicknair, supra; Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Felger v. Doty, 217 La. 365, 46 So.2d 300 (1950); Richardson v. Richardson, 275 So.2d 845 (La.App. 4th Cir. 1973); Adler v. Adler, supra.
We have pointed out above that the husband made no specific accusations of fault against his wife until during the process of the trial. There was at most an inference which cast suspicion that the wife might at some unspecified time have conducted herself with impropriety with some unknown man. The burden of disproving such vague inference is extremely heavy and must not be imposed without substantial reason. We think the wife has met that inference sufficiently in the absence of more substantial evidence of her fault in this respect.
The cooking and washing issue involves conduct of omission which, in order to constitute the fault contemplated by Article 160 must be continuous or habitual over a sufficiently long period to become a pattern of behavior. It cannot be assumed from isolated instances of failure to perform these duties.
It is our opinion that reasonable and fair application of the rule of burden of proof justifies the conclusion that the wife, appellant, has discharged that burden.
The wife's need and the means of the husband to pay alimony were not reached by the trial court. We therefore have nothing before us upon which we can determine those issues. The case will be remanded *833 for further trial to determine those issues and for such judgment as will be appropriate in the factual situation then determined.
The judgment appealed is reversed and it is decreed that the wife, Olivia Lewis Carter, has discharged the burden of proof of no fault within the contemplation of Article 160 of the Civil Code. Further ordered, that the case be remanded for further proceedings as herein directed.
Reversed and remanded.