(96 South. 32)

No. 25615.

ABRAMS v. ROSENTHAL.

(April 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Divorce ⬅213—Willingness of wife's mother to respond to any call upon her not asset which could defeat right to alimony.**

Where wife's mother was receiving entire revenue of land which wife helped to purchase, and wife had no legal right thereto, the mother's willingness to respond to any call upon her by the wife was not an income-producing asset defeating the wife's right to alimony.

2. **Divorce ⬅213 — Wife's personal earnings are "income" within statute as to temporary alimony.**

Under Civ. Code, art. 148, providing that, if wife has not sufficient income for maintenance during separation suit, judge shall allow her sum for support, the wife's personal earnings are "income."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

3. **Divorce ⬅213—Wife not entitled to temporary alimony if she has sufficient income of her own.**

Under Civ. Code, art. 148; if wife has income, earned or unearned, sufficient for maintenance in the style and under conditions to which she is accustomed by reason of her husband's means and position, she is not entitled to alimony pendente lite.

4. **Divorce ⬅213—Wife entitled to award of temporary alimony for difference between income and amount necessary to proper maintenance.**

If wife's revenues are only partly sufficient for maintenance in style and under conditions to which she is accustomed, she may have difference made up by award of alimony pendente lite under Civ. Code, art. 148.

5. **Divorce ⬅213—That wife capable of earning income does not defeat right to temporary alimony.**

Under Civ. Code, art. 148, providing for allowance of alimony pendente lite, if wife has not sufficient income for maintenance during suit, the wife's earning ability does not defeat right to alimony if she is not actually earning an income.

6. **Divorce ⬅215—One-third of husband's income is usual basis of award of temporary alimony.**

The usual basis upon which alimony pendente lite is awarded, where no exceptional features are presented, is one-third of husband's income, and, where wife's earnings during certain period were below that amount, she is entitled to receive the difference.

7. **Divorce ⬅217—Award of temporary alimony not final and open to re-examination on change of conditions.**

Award of alimony pendente lite is not a final judgment, but one which at any time is

open to re-examination and modification if conditions should change.

O'Niell, C. J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Suit by Mrs. Selma Abrams, wife of Dr. Maurice S. Rosenthal, against Dr. Maurice S. Rosenthal. From a judgment awarding alimony pendente lite, defendant appeals. Amended in part, and set aside and annulled in part.

Mark M. Boatner and Samuel Wolf, both of New Orleans, for appellant.

Henry W. Robinson, of New Orleans, for appellee.

ROGERS, J. Plaintiff, having sued defendant for separation from bed and board, ruled him into court for alimony pendente lite. The lower court awarded alimony at the rate of $100 a month. On appeal this judgment was reversed, and the case was remanded for a new trial, with instructions. Abrams v. Rosenthal, 151 La. 987, 92 South. 567. The second trial resulted in a judgment for alimony of $65 a month. From this judgment defendant has appealed, and plaintiff has answered the appeal praying for an increase of the award to $100 a month.

The purpose of remanding the case was: (1) To permit proof of the employment, subsequent to the first trial below, of plaintiff by the school board of the parish of Orleans at a salary of $225 a month, as alleged by affidavit filed in this court; and (2) to admit testimony, ruled out on objection, tending to show that plaintiff was receiving, or that there was available to her, an income of about $100 a month as her share of the rentals of certain real estate in which it was asserted she owned an interest.

[1] Considering these points in their inverse order, we do not find that the evidence satisfactorily establishes the receipt by plaintiff of any income from real estate. It appears from the testimony that she and her sister worked for years as teachers, while their mother took in boarders and lodgers; that the joint earnings were pooled, and from the savings thereof two parcels of real estate were purchased. The titles of these properties were placed in plaintiff and her sister, although the mother had a large interest therein, in order, as explained in the testimony, to protect the sisters, as they were single girls having no man in the family upon whom they could rely for advice or assistance. Plaintiff, prior to her marriage, transferred her interest in the real estate to her sister for the purpose of reimbursing her mother and sister for the expenses of her wedding, entertainments, trousseau, etc.; plaintiff's equity in the properties being less than a third of said expenses. Since this transfer the entire revenues of this real estate have been received by plaintiff's mother, and are now used, in a large measure, to pay off a mortgage bearing upon one of the properties. Plaintiff is not sharing in these revenues, nor are they, in a legal sense, available to her, although it will not be doubted that the mother would readily and cheerfully respond, to the extent of her ability, to any call made upon her by her daughter. This maternal impulse, however, cannot be capitalized into an income-producing asset to defeat plaintiff's right to alimony, if she be otherwise entitled thereto.

The evidence clearly shows that plaintiff now has no income except that derived from her personal labor. According to the record, plaintiff and her husband separated October 3, 1921, the suit for separation from bed and board was filed October 5, 1921, and on the same day plaintiff secured employment at Tulane University at a salary of $75 a month, and at about the same date began to earn, additionally, $12 a month for certain clerical work. This employment contin-

ued until February 1, 1922, when she became a teacher in the public schools at a salary of $225 a month. As the school year consists of 10 months, her annual earning from this source is $2,250. She also derives a small income from coaching pupils sent to her by some of the members of the faculty of Tulane University.

Defendant, on the other hand, is shown to have earned $4,211 for nine months, with expenses of $1,731, leaving $2,843 as his net earnings for that period, or at the rate of $3,788 annually. He also lives with his parents without expense for board and lodging.

[2] Under the facts stated, is plaintiff entitled to alimony pending the final determination of the suit for separation from bed and board which she has instituted against her husband. The law applicable to the case is found in article 148, R. C. C., which reads:

"Art. 148. If the wife has not a sufficient income for her maintenance during the suit for separation, the judge shall allow her a sum for her support, proportioned to the means of her husband."

Plaintiff contends that the "income" referred to in the article means revenue derived from property, and not from personal earnings, and that payment of alimony is only a continuance of the obligation of the husband to support his wife. Defendant, on the other hand, holds that the income spoken of in the article makes no distinction between unearned and earned income, and that, as plaintiff is in receipt of a sufficient income from her personal labor for her maintenance, she is not entitled to alimony.

The word "income" has a plain and unambiguous meaning which is easily understandable. The Century Dictionary defines it to be:

"That which comes to a person as payment for labor or services rendered in some office, or as gains from lands, business, the investment of capital, etc.; receipts or emoluments regularly accruing."

Black's Law Dictionary gives it the following meaning:

"The return in money from one's business, labor, or capital invested; gains, profit, or private revenue."

[3, 4] Thus no distinction is made either in the ordinary or in the legal use of the word, between the returns in money accruing from invested capital and the earnings resulting from personal labor. Where usage and law make no distinction, the court cannot. If the wife be in receipt of an income, earned or unearned, sufficient for her maintenance in the style and under the conditions to which she is accustomed by reason of her husband's means and position in the community, she is not entitled to alimony pendente lite. If her revenues are only partially able to meet the requirement, she may have the difference made up by an award of alimony therefor.

It is true that in Jackson v. Burns, 116 La. 695, 41 South. 40, cited by plaintiff, the court indulges in an inference seemingly at variance with the views herein expressed. The court says:

"We must therefore infer that, for the purposes of that article [148], the word 'income' refers to a revenue derived from some other source than the labor of the recipient."

Neither the facts of the case nor the law applicable thereto nor the decree rendered therein support this statement, and the rule of decision of a case and its effect as authority must be obtained by considering its facts, rather than inadvertent expressions used in the opinion which are inconsistent with the decree.

In the cited case it was shown that the wife received $16 a month for services as cook, which was manifestly inadequate to support her and her minor child of the marriage. The court allowed alimony from judicial demand, awarding a lump sum, which figured at less than $12.50 a month—a clear indication that the court took into consider-

ation the earnings of the wife in fixing the amount.

The inference of the court was based, apparently, upon a comparison which it made of the provisions of article 148 of the Civil Code with the provisions of article 160 of the same Code. This comparison did not justify the inference drawn therefrom, but, on the contrary, supports the views hereinabove expressed. In article 148 income is referred to without any qualification whatsoever, while in article 160 the income alluded to is expressly restricted to income derived from the property of the husband. Had the framers of the Code intended the income spoken of in article 148 to be limited to income from property, they would have so provided, as they did in the case covered by the provisions of article 160. As a matter of fact the lawmaker, by the enactment of Act 247 of 1916, has extended the scope of article 160 so that it is now on a parity with article 148, by permitting the wife who has secured a divorce to obtain alimony out of the "earnings" (income from labor) as well as out of the income of property of the husband.

[5] The court in the cited case also uses the following language:

"It will hardly be contended that, upon an application under article 148, the husband could escape the payment of alimony by showing that his wife was capable of earning an 'income' by her own labor."

If such contention was made, it would not receive a moment's consideration. The test is not whether the wife who is separated from her husband is capable of earning an income by her own labor, but whether, as a matter of fact, she actually does earn an income sufficient, or more than sufficient, for her maintenance in the state of society to which she is accustomed. It would be against reason and justice to allow a wife separated from her husband, and who by exceptional ability earns a large income, to augment that income by way of an allowance of alimony against a husband of mediocre ability earning only a small income. This would, however, be the inevitable effect of upholding the contention advanced by plaintiff in this proceeding. A better statement of the rule is that a wife, without property of her own, who sues her husband for a separation from bed and board, is not required to go out into the arena of business in order to obtain the funds necessary to support herself, as the law imposes that obligation upon the husband, but, if she does choose to earn her own living pending the issue of the suit, she thereby takes herself out of the provisions of article 148 of the Civil Code to the extent of her earnings.

Counsel for plaintiff also cites Huber v. King, 49 La. Ann. 1503, 22 South. 887; Hill v. Judge, 114 La. 46, 38 South. 14; Nissen v. Farquhar, 121 La. 642, 46 South. 679; and Cignoni v. Cignoni, 139 La. 978, 72 South. 707. None of these cases is precisely in point. In Huber v. King there was no dispute of the wife's need, and the only defense to the claim for alimony was the inability of the husband to pay. Hill v. Judge was a case where the husband was in possession of the community estate, and the wife was without means of support. In Nissen v. Farquhar the court remanded the case for proof of the husband's means, as the record was unsatisfactory upon that point. It was not argued that the wife had an income, and no reference was made in the opinion to any such contention. In Cignoni v. Cignoni the court held that the wife was not bound to impinge upon her small capital, $741, for her expenses while her husband was living out of his income of $250 a month. In that case alimony of $50 a month was awarded.

Defendant urges as a third point of defense that the lower court refused to give effect to evidence offered on the subject of the deterioration of two automobiles which he uses for his professional purposes. In

view of the indefinite and uncertain character of the evidence offered upon this claim, and from the further fact that the automobiles in question seem to be used indiscriminately by defendant and his family, we are unable to make any allowance upon this demand.

[6] While there is no arbitrary rule by which alimony pendente lite is fixed by the courts, the usual basis upon which the award is made, where no exceptional features are presented, is one-third of the husband's income. Plaintiff's earnings, as shown by the record, for the months of October, November, and December, 1921, and January, 1922, were $87 a month, and, thereafter were $225 a month with an additional amount, not definitely established, derived from coaching a few pupils. Defendant's revenues, on the other hand, approximated $315 a month for the same period. Upon the basis of one-third of the husband's income, therefore, plaintiff, if she was not in the enjoyment of any income, would be entitled to receive alimony at the rate of $105 a month. To the extent that her earnings for the months of October, November, and December, 1921, and January, 1922, fell below this amount she is entitled to receive alimony—that is to say, the differences between $87 and $105 a month or at the rate of $18 a month for four months, a total of $72. Inasmuch as her earnings for the subsequent months exceeded $105 a month, the court is unable to allow alimony for those months.

[7] If conditions should change in the future, if defendant's income should increase, or should plaintiff cease to labor, or should she lose her position or be unable to work, from any cause, as an award of alimony is not a final judgment, but one which at any time is open for re-examination and modification, plaintiff may obtain the proper relief by applying to the court of original jurisdiction.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by ordering defendant to pay plaintiff alimony at the rate of $18 a month for the months of October, November, and December, 1921, and January, 1922, and that in all other respects the said judgment be set aside and annulled, plaintiff to pay costs of appeal and defendant to pay the costs of the lower court.

O'NIELL, C. J., is of the opinion the judgment should be affirmed.

LAND and ST. PAUL, JJ., concur in decree.