141 So.2d 448 (1962)
Esther BECKER, Wife of Nathan SHAPIRO,
v.
Nathan SHAPIRO.
No. 40.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
Rehearing Denied June 4, 1962.
Sam Monk Zelden, Max Zelden, New Orleans, for plaintiff-appellee
Sydney J. Parlongue, New Orleans, for defendant-appellant.
Before SAMUEL and JOHNSON, JJ., and LUTHER E. HALL, J. pro tem.
SAMUEL, Judge.
This is a suit by the wife for a separation from bed and board. A suspensive appeal by the defendant husband from a judgment awarding the separation and condemning him to pay alimony was heard and decided by this court and subsequently, on re-hearing, dismissed as moot for the reason that the litigants had been divorced during the pendency of the appeal. Shapiro v. Shapiro, La.App., 131 So.2d 303. We are now required by the Supreme Court (Shapiro v. Shapiro, La., 139 So.2d 762) to review "* * * the question of the correctness of the amount of the alimony *449 award for the interim period between the separation and divorce decrees."
The alimony awarded was in the amount of $100.00 per week for the support and maintenance of the plaintiff wife and a 10 year old son born of the marriage. At the time of the trial plaintiff was living in New York City where, in preparation for the possible future need of supporting herself, she had been through a school which taught practical nursing, for which she had paid tuition, and was taking a hospital training course in that type of work. While in training she received $10.00 per month. The minor child was boarding at a private military academy at a cost of approximately $2,000.00 per year, this cost being borne by the wife. She had realized some money from the sale of the former matrimonial domicile, which sale took place shortly after the actual separation, and had about $3,000.00 of that money remaining in her possession on deposit in a New York bank. Prior to trial the husband voluntarily had been paying plaintiff $115.00 per week. She had no income or available resources other than as above set forth.
The husband is a partner holding a half interest in a business engaged in flooring contracting and sales, from which business he has a drawing account of $100.00 per week. He is also involved in real estate transactions as owner and speculator and he describes the speculation feature as follows: upon finding a suitable piece of property he interests a buyer in purchasing; the latter furnishes all the money involved and he, defendant, manages and improves the property, collects the rents and negotiates a sale to another purchaser, all to the end that defendant receives 25% of the total profits realized from the sale and the rents after all expenses and costs have been deducted.
The testimony of the husband was, in many instances, evasive and not clear. It is corroborated in some measure by an accountant who kept his accounts and records for a period of six to seven years and prepared his income tax returns during that time. The accountant's testimony in some instances also is not clear and we are unable to reconcile some of his figures, more particularly those relative to total net income. However, we conclude that the testimony of these two witnesses is to the following effect:
Defendant operated on a fiscal year basis ending on September 30, which date was approximately one month prior to the trial. During the course of the last fiscal year preceding the trial defendant had several sources from which he could have received income. In addition to his partnership in the flooring business, he was involved in three other so-called partnerships apparently having their source in the speculation feature described hereinabove and he owned an interest in several active pieces of real estate. He collected approximately $1,600.00 per month in rents and realized a profit from two sales of speculation property, one sale being for a total consideration of $24,200.00 and the other for $25,000.00. During that fiscal year he also purchased an additional undivided interest in a motel for the sum of $10,000.00 which amount he borrowed on a short term note. The total net income thus received by defendant during the course of the fiscal year is set by the accountant at the round figure of $8,600.00. But from his own testimony this figure is incorrect. For he testified that defendant's net taxable income was $6,990.21 which was derived from the partnerships and included taxable "commissions" received from the sales of the two properties (defendant's actual income from these sales being of course twice the "commissions" because they were long term capital gains under federal income tax laws). For income tax purposes the "commissions" received from the sales were $899.00 and $1,074.00. But this witness also testified that defendant's share of the profits from the flooring partnership alone was $6,571.87. Addition of double the so-called "commissions", or $3,946.00, and the profits from the flooring partnership alone, *450 $6,571.87, results in a figure of $10,517.87, which we conclude was the defendant's total net income, for the purposes of determining the amount of alimony which should be paid, according to the defense testimony. Other than the $10,000.00 defendant had borrowed for the purpose of purchasing an additional interest in the motel, his debts were not sufficiently material to make any difference in connection with the issue we are now considering.
Defendant contends that alimony at the rate of $100.00 per week is excessive for the reason that the record does not reflect plaintiff's need for that amount, particularly in view of the cash which she had on hand and which should be considered as income, and that, in any event, defendant's income does not justify such an award.
Defendant's first contention primarily is based upon the argument that the amount of cash in plaintiff's possession, which he further contends was in the amount of $11,000.00 but which the record clearly establishes as being $3,000.00 at the time of the trial, should be considered as income and sufficient for her maintenance. We do not agree. The jurisprudence of our Supreme Court is to the effect that alimony after a judgment of separation from bed and board is alimony pendente lite, controlled by Article 148 of the LSA-Civil Code and not by Article 160 of that Code. Hillard v. Hillard, 225 La. 507, 73 So.2d 442; Arnold v. Arnold, 186 La. 323, 172 So. 172; Anzalone v. Anzalone, 182 La. 234, 161 So. 594. Article 148 refers to "income" of the wife whereas Article 160, which on its face is concerned with alimony after divorce, refers to her "means". However, here we find no necessity to review or pass upon the question of whether or not plaintiff's "means", and by this we refer to the $3,000.00 in cash which she possessed plus the $10.00 per month salary she earned, should be considered as sufficient for her maintenance under the doctrine enunciated in Smith v. Smith, 217 La. 646, 47 So.2d 32, and later cases, all concerned with alimony after divorce under Article 160. For in Smith the court held that the wife need not make use of or deplete all of her capital before she can be considered as being in need under the article. Under this holding we do not feel that the possession of the sum of $3,000.00 by the wife in the instant case would give the defendant the right to refuse to pay alimony for her maintenance and support. Her earned income of $10.00 per month is, of course, inconsequential. We therefore hold that the husband must pay alimony to the wife despite her possession of this sum of money, a conclusion which would be true under either Article 148 or Article 160.
We also conclude that the wife needs the full amount of the alimony awarded. That award is in the total amount of $5,200.00 per year out of which she is required to pay at least $2,000.00 for the child alone. From a careful review of the entire record we are of the opinion that she needs the balance of the alimony, which amounts to less than $3,200.00 per year, for her own maintenance and support.
The more serious question presented for our determination is defendant's last contention that his income does not justify an award of $100.00 per week. In his reasons for judgment the trial judge said that he did not believe the defendant testimony relative to the amount of his income. That judge obviously was of the opinion that the income was higher than the $10,517.87 figure. We agree with that conclusion. As we have mentioned before, the defense testimony on the question of the defendant's income was based primarily on taxable income. While the defendant failed to file any documentary evidence and we are thus unable to check the figures closely, we believe that the item of depreciation, which in the instant case could play a substantial part in the tax figures and no part at all in connection with the question of income as it relates to alimony payable therefrom, must have been deducted from the final net *451 income figure as given by the defendant and his accountant.
By his own testimony defendant has received a large amount of money, $1,600.00 monthly in rents alone, for which he has not given a satisfactory accounting. The trial judge actually reduced, by $15.00 per week, the amount defendant has been paying voluntarily. We conclude that the award of alimony to the wife at the rate of $100.00 per week for the maintenance and support of herself and the child was not excessive
For the reasons assigned, the judgment appealed from, only insofar as it is concerned with alimony for the wife and child, is affirmed; all costs to be paid by the defendant.
Affirmed.