331 So.2d 438 (1976)
Ellise Brian WILLIAMS
v.
Albert WILLIAMS.
No. 56805.
Supreme Court of Louisiana.
March 29, 1976.
Rehearing Denied May 14, 1976.
*439 William H. Delaunay, Provosty & Sadler, Alexandria, for plaintiff-appellant.
T. Gerald Henderson, Chris J. Roy, Gravel, Roy & Burnes, Alexandria, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., William D. Maynor, Asst. Atty. Gen., for intervenor-appellant.
MARCUS, Justice.
Ellise Brian Williams filed suit seeking a separation from bed and board from her husband, Albert Williams, on the ground of cruel treatment. In her petition she alleged that she was in necessitous circumstances and prayed that the court order defendant to pay her alimony pendente lite. Defendant filed a peremptory exception of no cause of action to her claim for alimony pendente lite, asserting that article 148 of the Civil Code, the legislation granting this right only to the wife, violates the fourteenth amendment to the United States Constitution and the Louisiana Constitution of 1974. The Attorney General, as authorized by La.Const. art. IV, § 8 (1974), intervened in the suit to defend the constitutionality of article 148. See La.Code Civ.P. art. 1091 (1960). The trial court sustained the exception of no cause of action predicated on the invalidity of the article [1] and declared that article 148 denies married men equal protection of the law and due process of law and thereby violates the fourteenth amendment and art. I, §§ 2 and 3 of the Louisiana Constitution of 1974. The State[2] appeals from this ruling pursuant to La.Const. art. V, § 5(D)(1) (1974). See La.Code Civ.P. art. 2086 (1960).

I.
Article 148 of the Civil Code states as follows:
If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband.
(Emphasis added.)
Defendant contends that article 148, because it restricts its coverage to wives, creates a sex-based classification that is violative of both the United States and the Louisiana constitutions.
The Louisiana Constitution of 1974 does not proscribe laws that draw rational sex-based classifications. Article I, section 3 of the constitution provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
(Emphasis added.)
This court recently interpreted the foregoing constitutional provision in State v. *440 Barton, 315 So.2d 289 (La.1975),[3] where we stated:
The first sentence of the section was intended only as a restatement of the federal equal protection guarantee. . . . The second sentence (which uses absolute language), in comparison with the third sentence (which employs the arbitrary, capricious, or unreasonable formula), permits no discrimination because of race or religious ideas, beliefs, or affiliations.
The third sentence delineates the limitation on the power of the state to discriminate by law against persons of specified classes, including members of either sex. The limitation imposed does not absolutely preclude the legislature from defining the range of persons affected by legislation according to the various classes listed in the section; rather, it proscribes the unreasonable or arbitrary definition of those affected according to class. Accordingly, if the discrimination that results from the legislative classification is found to be within reason, the statute is not in violation of the constitution.
315 So.2d at 291 (footnotes omitted).
Nor does the equal protection clause of the fourteenth amendment to the United States Constitution deny this state the power to accord differing treatment to the sexes in its legislation. The United States Supreme Court has held that the equal protection clause does not prohibit a legislative classification based on sex, provided that the classification is reasonable, not arbitrary, and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). See also Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

II.
In subjecting article 148 to state and federal constitutional scrutiny under the tests set forth above, we must consider the function and purpose of article 148 against the background of Louisiana's community property system.
The community of acquets or gains is imposed upon married residents of this state by operation of law absent a contrary stipulation in a marriage contract. La.Civil Code arts. 2329, 2332, 2399 (1870). The community of acquets or gains is the matrimonial regime under which nearly all of Louisiana's married couples acquire and dispose of property.
The Civil Code states that the husband is "head and master" of the community of acquets or gains, and that he, and not the wife, administers its effects and disposes of the revenues which they produce. La.Civil Code art. 2404 (1870). Upon the filing of suit for a separation or divorce, the husband's powers of administration are somewhat diminished; he may no longer contract a community debit or dispose of the immovable property belonging to the community in fraud of his wife's rights. Id. art. 150. Further, the wife may seek an injunction restraining him from disposing of or encumbering the community property. Id. art. 149; La.Code Civ.P. art. 3944 (1960). In other respects, however, the community regime remains in existence until a judgment of separation or divorce might be rendered, at which time the community is dissolved retroactively to *441 the date on which the petition was filed. La.Civil Code arts. 155, 159 (1870).
Because of the wife's lack of control over her own earnings (which fall into the community until she lives separate and apart from her husband) [4] and the revenues from the community and her separate property (both of which fall into the community and are under her husband's administration),[5] we believe that it was reasonable for the legislature to seek to afford her special protection during the final (and often nonamicable) stage of the community's existence. The legislature has sought to accomplish this objective by requiring the husband to pay his wife a sum during the pendency of the litigation that will enable her to maintain the standard of living that she was accustomed to enjoying during the marriage. Abrams v. Rosenthal, 153 La. 459, 96 So. 32 (1923).
The length of time during which this sum is due is also, in our view, a reasonable one. In divorce cases not predicated on a prior legal separation, the community remains in existence from the filing of the petition until such time as a judgment of divorce might be rendered. Throughout this period, the community is in a non-partitioned state and the wife is consequently unable to enjoy her interest in those assets that have fallen into it. In separation cases, we have permitted the wife to claim alimony pendente lite after a judgment of separation is rendered (and the community dissolved) until the judgment of divorce. Arnold v. Arnold, 186 La. 323, 172 So. 172 (1937). Allowing her this right after the judgment of separation is likewise reasonable and sometimes necessary, in view of the delays often attending the partition of the community that can serve to prevent her from actually realizing her interest in the community for a substantial period of time. Further, a judgment ordering the husband to pay alimony pendente lite is always subject to modification. If the community is partitioned in a separation proceeding prior to the judgment of divorce, the husband may be relieved of his obligation to pay alimony pendente lite if the wife receives income that is sufficient for her maintenance as a result of the partition. See McMath v. Masters, 198 So.2d 734 (La.App. 3d Cir. 1967). Finally, if no reconciliation has occurred following the separation the husband can in all cases terminate his obligation of providing alimony pendente lite by obtaining a judgment of absolute divorce when a year and sixty days have elapsed from the separation decree. La.R.S. 9:302, as amended, La.Acts 1970, No. 476, § 1.

III.
Upon consideration of article 148 in light of its objective, we conclude that the trial court erred in declaring the article unconstitutional. The article does not discriminate arbitrarily, capriciously, or unreasonably against males. Husbands and wives are not similarly situated under Louisiana's community property system. The legislative conferral of the right of claiming alimony pendente lite only to wives bears a fair and substantial relation to the legitimate objective of the articlea fair and orderly termination of the community regime. Accordingly, article 148 does not deprive males of equal protection or due process of law under the fourteenth amendment to the federal constitution, nor does it violate article I, sections 2 and 3 of the Louisiana Constitution of 1974.

DECREE
For the reasons assigned, the ruling of the trial court sustaining the exception of no cause of action based on the unconstitutionality *442 of article 148 is reversed; defendant-appellee is cast with the costs of this appeal.
DENNIS, J., concurs for the reasons assigned.
CALOGERO, J., dissents and assigns reasons.
TATE, J., dissents for the reasons assigned by CALOGERO, J.
DENNIS, Justice (concurring).
I concur in the result reached by the majority opinion, but for different reasons. The classification drawn by La.Civil Code article 148 is not arbitrary, capricious or unreasonable. La.Const. of 1974, Art. I, § 3. Instead, it has a "fair and substantial relation to the object of the legislation, that object being the reduction of the disparity between the economic capabilities of a man and a woman"a disparity which is likely to be exacerbated for a wife during separation and divorce proceedings. See Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).
CALOGERO, Justice, (dissenting).
The majority concludes that Article 148 of the Civil Code does not arbitrarily or unreasonably discriminate against men in violation of the equal protection guarantees of the federal and state constitutions because it finds that under the Louisiana community property system men and women are not similarly situated. In their opinion, the two sexes are not similarly situated because the husband, as head and master of the community, controls the funds and property which make up the community of acquets and gains between them.
It is true, of course, that under the community property system as it presently operates, the husband retains control over the couple's community property until the community is partitioned. And I believe the original purpose of the legislature in enacting Article 148 was to supply a wife with living expenses, if she needed them, pending the time that she gained administration of her portion of the community.[1]
However, under the jurisprudence of this state, there is no relationship between the wife's right to claim alimony pendente lite and her inability to control community funds. Our courts have consistently required husbands to pay alimony pendente lite long after the community has been partitioned and the wife is in complete control of her portion of the community. McMath v. Masters, 198 So.2d 734 (La.App.3rd Cir. 1967); Fontenot v. Fontenot, 175 So.2d 438 (La.App.4th Cir. 1965). Husbands have been required to make these alimony payments even though the wife's earnings do not fall into the community during the time the spouses are living separate and apart (L.C.C. art. 2334) and even though the wife's income from her separate property may never have fallen into the community (L.C.C. art. 2386). Courts have even forced husbands to pay alimony pendente lite out of their separate funds if no community funds exist. Presumably, alimony would be due the wife even if the couple had agreed to a marriage contract (L.C.C. arts. 2329, 2332, 2399) and had never owned anything classified as community property.
Furthermore, our courts have interpreted the article in such a way as to place an extremely heavy financial burden on husbands regardless of the financial situation of the two partners. Article 148 grants alimony to the wife who "has not a sufficent income for her maintenance." This provision has been read to grant a wife alimony even if she has a significant amount of separate property. Thomas v. Thomas, 281 So.2d 471 (La.App. 4th Cir. 1973); *443 Shapiro v. Shapiro, 141 So.2d 448 (La.App. 4th Cir. 1962). She is not required to work even though she may be capable of earning her own income and has done so in the past. Bilello v. Bilello, 240 La. 158, 121 So.2d 728 (1960). And, of course, even if the community between the spouses has already been partitioned, and the wife currently possesses a significant liquid sum of money, she is not required to deplete that amount in order to maintain herself.[2]McMath v. Masters, supra; Fontenot v. Fontenot, supra.
The sum of money which the wife is due under the provisions of Article 148 is "proportioned to her needs and to the means of her husband." The term "means" refers to all of the husband's resources, not merely his income. Bowsky v. Silverman, 184 La. 977, 168 So. 121 (1936); Vaughan v. Vaughan, 286 So.2d 416 (La.App. 4th Cir. 1973).
Striking Article 148 as unconstitutional would not necessarily deprive Louisiana wives of alimony pending separation and pending divorce because Article 119 of the Civil Code affords a vehicle for such claims. This article states that "the husband and wife owe to each other, mutually, fidelity, support and assistance." By its terms it would seem available as a basis for a claim for alimony pendente lite, and it has been so used by courts in the past. Chauvin v. Chauvin, 282 So.2d 869 (La.App. 3rd Cir. 1973); Adams v. Adams, 243 So.2d 318 (La.App. 4th Cir. 1971), writs refused, 258 La. 212, 245 So.2d 410; Hillard v. Hillard, supra.; see Lazarus, supra., at 419-23. Because it mandates reciprocal support, it does not treat the sexes differently.
Furthermore, summary process would be available to implement Article 119's reciprocal support provision pending separation and/or divorce, under Article 2592 of the Code of Civil Procedure. The application of summary proceedings depends not upon a particular statute or code article, but upon the nature of the action. Article 2592 provides that summary proceedings may be used for trial or disposition of "[a]n incidental question arising in the course of litigation" and in "the original granting of, subsequent change in, or termination of . . . alimony . . .."
For these reasons, I respectfully dissent.
NOTES
[1] The trial court, however, held that she stated a cause of action for alimony under Civil Code article 119, which declares that husband and wife owe one another mutual support and assistance.
[2] Plaintiff wife did not appeal from the trial court's ruling that article 148 of the Civil Code is unconstitutional.
[3] In Barton we rejected a challenge to the constitutionality of La.R.S. 14:74, which makes neglect of wife, but not neglect of husband, a crime.
[4] La.Civil Code art. 2334 (1870).
[5] The wife can exclude the fruits of her paraphernal property from the community by executing a notarial act declaring her intention to administer the property for her separate use and benefit. La.Civil Code art. 2386 (1870), as amended, La.Acts 1944, No. 286.
[1] See Hillard v. Hillard, 225 La. 507, 73 So.2d 442 (1954); 13 La.L.Rev. 600 (1953); Lazarus, What Price Alimony, 11 La.L.Rev. 401 (1951) [hereinafter cited as Lazarus].
[2] Some courts, however, may assume that she is able to live off income which the capital produces, and impute that income to her. See Schmidt v. Schmidt, 210 So.2d 149 (La.App. 4th Cir. 1968).