STOKER, Judge,
concurring.
The majority opinion in this case rests entirely on the pronouncement in Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967) which held that in the absence of incapacity of the parties, there could be an agreement to waive the right to claim alimony in the future. In the Nelson case, the Louisiana Supreme Court held the agreement in that case was a nullity because it had been entered into while the parties were still married although judicially separated. It was made as a part of a community property settlement after the separation judgment. However, the Supreme Court held that the nullity in question was only relative and not absolute, and, therefore, it could be ratified. Ratification was found on the ground that prior to the divorce the wife had not attacked the waiver agreement and years had passed. This pronouncement made in 1966 in Nelson v. Walker, supra, was apparently a dictum statement inasmuch as the Court found that the alimony waiver did not form such an integral part of the community settlement agreement that the settlement could not be upheld independently of the alimony waiver. Thus, the pronouncement was not necessary to the resolution of the basic question in Nelson v. Walker which was concerned with the validity of title to real property acquired by Mrs. Nelson in the community property settlement. Mrs. Nelson was not claiming alimony in contravention of the waiver of alimony which she had made in what purported to be a part of the consideration for the transfer of the real property to her by her former husband in the community property settlement.
In view of the fact that in Nelson v. Walker the Louisiana Supreme Court did not consider the validity of the waiver of alimony, either as necessary for a decision in the case, or in a direct contest over the issue, it may be open to question at this time whether the Louisiana Supreme Court would adhere to the basic rationale of the dictum of Nelson v. Walker, supra. That rationale was that, where the parties are not incapacitated from contracting with one another, the right to future alimony may be waived because alimony is a right established in favor of the person rather than for purposes of public order.
Our appellate courts have recently considered the constitutionality of alimony in the context of challenges on the ground of constitutional prohibitions against sex-oriented discriminations in statutes and laws. For example, see Williams v. Williams, 331 So.2d 438 (La.1976), which upheld the constitutionality of alimony under Article 148 of the Louisiana Civil Code. Traditional rules relative to alimony in several other aspects have also been under attack. An example has been the contention that in alimony considerations the earning capacity of a non-working wife should be considered the same as where a wife actually accepts employment and earns income. Ward v. Ward, 339 So.2d 839 (La.1976).
It would seem implicit in the pronouncements in these cases that the courts view alimony owed by spouses, or former spouses, as something more than a provision for the benefit of the individual, that it must have some broader foundation and would seem to be based on public order or public good. If such a postulate is correct, then a waiver of alimony in a marriage contract or antenuptial agreement, would be null by reason of the prohibition of Article 11 of the Louisiana Civil Code.[1]
*1387 A distinguished former Chief Judge of this Court, Judge J. Cleveland Frugé, once (while a district judge) declared Article 160 of the Louisiana Civil Code to be unconstitutional on the ground that it treated men and women unequally. The Louisiana Supreme Court reversed. Hays v. Hays, 240 La. 708, 124 So.2d 917 (1960). In referring to that case one reviewer has made this comment: “There may be much validity, too, to the argument advanced but not answered in an alimony case some years ago: if alimony is not in the public interest, then to order anyone to pay alimony to another amounts to taking private property for private use.” [2]
It would seem to me that if alimony has such a strong constitutional basis, as it has been held to have, and has such a fundamental public policy position in our law, as it has been held to have, then it is not established in favor of the individual but in favor of the public good. I would agree with the comment statement quoted above that if alimony is not in the public interest, to order another to pay it is unconstitutional. Parties contemplating marriage may view alimony in one light at the time of contracting. However, after marriage, the passage of time, change in the experience, health, obligations and other conditions of the party who would claim alimony, may disclose equities unanticipated at the time of marriage. Strong equities are urged to be present in this case which may serve as an example. Aside from protecting'the individual from lightly waiving future rights which may seem to be of remote value at the time, the public has an interest is not having a spouse left in necessitous circumstances, often destitute circumstances, which requires society to bear the cost of care either directly, or indirectly, through the results of forcing an individual to live at a bare survival level.
Despite the considerations reviewed above, I feel this court is bound by the pronouncement relied upon in the majority opinion contained in Nelson v. Walker, supra. Although it may be dictum only, it is the only statement of authority on the subject. Therefore, I concur.

. Article 11 of the Louisiana Civil Code provides as follows:
Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good. (Emphasis supplied.)

. Professor Robert A. Pascal, in Symposium, 28 Louisiana Law Review 314, (1968).