424 So.2d 263 (1982)
Diana Smith WHIPPLE
v.
Keith M. WHIPPLE.
No. 14940.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
On Rehearing December 9, 1982.
Writ Denied February 4, 1983.
Alan Fishbein, Baton Rouge, for plaintiff-appellee Diane Smith Whipple.
Dennis R. Whalen, Baton Rouge, and Ernest A. Kelly, Houma, for defendant-appellant Keith M. Whipple.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
This is an appeal from a judgment fixing the amount of alimony pendente lite payable by the husband, Keith Whipple, to his wife, Diana Smith Whipple, in the sum of $1,500.00 per month, due in equal installments *264 on the first and fifteenth of the month. The husband appealed. We affirm.
The parties were married in 1978. Both had been married before. No children were born of the marriage. The husband, who is a practicing lawyer, earns between $3,000.00 and $4,000.00 per month, which amounts the trial court averaged at $3,700.00 per month.
The parties lived in a 5,000 square foot house (the air conditioned space) with a swimming pool and went on several trips that were rather expensive. Also, the husband gave the wife a Mercedes-Benz automobile and considerable jewelry.
The sole issue presented in this case is the correctness of the trial court's determination that the earning capacity of the wife is immaterial in fixing the amount of alimony pendente lite. The trial court refused to admit testimony concerning the wife's earning capacity.
Counsel for appellant urges that the holding of this court in Smith v. Smith, 382 So.2d 972 (La.App. 1st Cir.1980), which ruled that the wife's earning capacity was material in fixing the amount of alimony pendente lite, is controlling. However, Smith was decided on the basis of LSA-C.C. art. 119, art. 148 being held to be unconstitutional in the form in which it existed at the time the judgment of the trial court was signed (May 15, 1979). Art. 148, before amendment, required the husband to pay alimony pendente lite, but not the wife, and it was thus held in Smith to be gender based and, hence, unconstitutional. Cf. Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Lovell v. Lovell, 378 So.2d 418 (La.1979).
We must decide the present case on the basis of art. 148 as it now stands, not as it stood at the time of the trial court's judgment in Smith. Art. 148, which provides for alimony pending separation or divorce (alimony pendente lite) now reads as follows:
"If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse."
Art. 160 of the Civil Code, which constitutes the Codal authority for the award of alimony after divorce (permanent alimony) now reads as follows:
"When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity, the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.
In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries."
Both articles, 148 and 160, were amended by the legislature into their present forms by the same Act, Act 72 of 1979. It will be noted that while earning capacity of both spouses is to be considered in fixing permanent alimony, no such determinative factor was legislatively provided for fixing alimony *265 pendente lite. As was correctly stated in Arrendell v. Arrendell, 390 So.2d 927 (La.App. 2d Cir.1980), the facts that earning capacities of both spouses were not given as factors to be considered in fixing alimony pendente lite while they are specifically given as factors to be considered in fixing permanent alimony, and that the amendments to arts. 148 and 160 were adopted by the same act of the legislature, indicate that earning capacity is not a factor properly to be considered in fixing alimony pendente lite.[1] As was stated further in Arrendell the period pending divorce or separation is a period of transition, in which the married party who had not been the breadwinner while the parties were living together is searching out possibilities for employment and adjusting to new circumstances. Thus, in that temporary situation, unlike the situation existing after divorce, the relative earning capacities of the two spouses is not a factor properly to be considered. We find the distinction obviously intended by the legislature to be made between arts. 148 and 160 determinative and hold the relative earning capacities of the two spouses was properly ruled irrelevant or immaterial for purposes of fixing alimony pendente lite.
Hence, we hold the trial court was correct in refusing to consider Mrs. Whipple's earning capacity, and affirm the action of the trial court in fixing the alimony pendente lite at $1,500.00 per month, there not having been a clear abuse of the broad discretion given the trial court in fixing alimony pendente lite. Frederick v. Frederick, 379 So.2d 808 (La.App. 4th Cir.1980); Ryan v. Ryan, 401 So.2d 514 (La.App. 2d Cir.1981).
The judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.
Before COVINGTON, LOTTINGER, EDWARDS, PONDER, LEAR, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER and ELLIS, JJ.

ON REHEARING
PER CURIAM.
We granted a rehearing to reconsider our original holding that the earning capacity of the wife in this case is not a factor properly to be considered in the determination of an award for alimony pendente lite.
La.Civ.Code art. 148 concerns alimony pendente lite. Before its amendment in 1979, it read as follows:
"If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband."
Under this form of article 148, courts construed "income" to include only the actual earnings or salary of the wife, as well as income produced from the wife's capital assets. The Louisiana courts refused to consider the wife's earning capacity as a factor in determining whether the spouse has sufficient income for maintenance. See Ward v. Ward, 339 So.2d 839 (La.1976); Bilello v. Bilello, 121 So.2d 728, 240 La. 158 (1960); Abrams v. Rosenthal, 96 So. 32, 153 La. 459 (1923); Cabral v. Cabral, 245 So.2d 718 (La.App. 4th Cir.1971); McMath v. Masters, 198 So.2d 734 (La.App. 3d Cir.1967); Shapiro v. Shapiro, 141 So.2d 448 (La.App. 4th Cir.1962).
Since alimony pendente lite was considered to be a method of enforcing the husband's obligation to support under La. Civ.Code art. 120 (an obligation which continues during the pendency of a suit for separation from bed and board or for divorce and which does not terminate until the marriage is dissolved by death or divorce), the wife was not required to obtain employment or deplete all of her capital *266 before being entitled to an award. Only if the wife voluntarily chose to earn her own living did she take herself out of the provisions of article 148 to the extent of her earnings. See Bilello, supra.
However, in Smith v. Smith, 382 So.2d 972 (La.App. 1st Cir.1980), this Court found article 148 in its pre-1979 amendment form to be unconstitutionally gender based. Therefore, the court looked to La.Civ.Code art. 119 in determining whether the wife was entitled to alimony pendente lite. Although previous cases had found alimony pendente lite to be based on the husband's obligation of support under article 120, the Smith court found that under article 119 the obligation of support is a mutual one, so that either spouse must come to the assistance of the other if the other spouse is in need thereof. The court concluded that the change in social circumstances now requires, where no impediment exists to the employment of the wife, she should not be entitled to alimony pendente lite unless she is shown to be unable to find employment with which to support herself.
Act 72 of the 1979 session of the Louisiana legislature amended article 148. Its new form reads as follows:
"If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse."
In LeBlanc v. LeBlanc, 405 So.2d 1187 (La.App. 1st Cir.1981), this Court had the occasion to address the present issue under article 148 as amended in 1979. After considering the primary legislative purpose in amending the article to remove its sexbased discrimination, we concluded the present article 148 must be interpreted on an even and non-discriminatory basis in order to reflect article 119's mutual obligation of support. To accomplish this goal, we concluded the wife may not establish need for alimony pendente lite by merely refusing to work, just as the husband may not escape his obligation of support by refusing to work. Otherwise, a situation may be created in which the spouses could race to quit work, without just cause, in order to require the other spouse to pay alimony pendente lite.
The Second Circuit has rejected the Smith-LeBlanc rationale.[1] In Arrendell v. Arrendell, 390 So.2d 927 (La.App. 2d Cir. 1980), the Second Circuit stated it disagreed with Smith insofar as it stood for the proposition that a wife must show she is unable to find employment as a precedent to obtaining alimony pendente lite. Arrendell accepts the traditional view that alimony pendente lite is designed to preserve the status quo insofar as maintenance and support are concerned. The pendente lite period is seen as a time for rehabilitation and if "the spouses themselves have, during the marriage, assigned the role of wage earner to one and the role of homemaker to the other, fairness and practicality dictate that the wage earner spouse continue that role during the temporary period of litigation and adjustment." 390 So.2d at 930. Yet, even Arrendell admits the earning capability of the claimant spouse should be considered if neither spouse is employed or if a claimant spouse has been regularly employed during the marriage but happens not to be employed at the very moment of trial of the alimony rule, and has the capability of securing employment immediately.
Our decision following the original hearing in the instant case was contrary to LeBlanc. This result, that earning capacity is not a factor properly to be considered in fixing alimony pendente lite, was reached after a re-examination of Arrendell and of the comparative legislative history and wording of Civil Code articles 148 and 160. We now conclude the LeBlanc decision should not be overruled; rather it, along with Smith, needs amplification.
Aside from the removal of the sex bias in old article 148, the 1979 amendment also changed the word "shall" to the word *267 "may" in providing for an award of alimony pendente lite. Thus, as article 148 now stands, it is discretionary with the trial court to award alimony pendente lite if the petitioning spouse lacks sufficient income for his or her support. We find the legislative purpose in making the change in wording from "shall" to "may" to have been to effect a substantive change so that the trial court is not always required to award alimony if other factors are present, such as the petitioning spouse's capacity for selfsupport. For example, the trial court's discretion could be used to avoid the problem foreseen in LeBlanc. If it is apparent a claimant has quit work or is only temporarily unemployed, the judge may exercise his discretion and refuse a pendente lite award or give a decreased amount.
We do not believe, however, the trial court must in all cases expect the petitioning spouse to seek employment immediately. Perhaps, as suggested in Arrendell, when the period of alimony is not likely to be of an extended duration, it is improper to require the petitioning spouse to undergo the new and disarming experience of searching out a job. Nor is it required, depending upon attendant circumstances, that the claimant seek just any type job or accept the first job offered. However, it is equally improper to refuse to consider the petitioning spouse's earning capacity altogether, when earning capacity, ease of obtaining a job, the care and supervision of children, and the possible duration of alimony pendente lite are all factors to be considered by the trial court.
In the present case, the trial court refused to admit testimony tending to show the petitioning spouse's capacity for selfsupport, and likewise refused to consider the spouse's earning capacity in framing its judgment. Apparently the trial court was of the view that since article 148 does not specifically require a consideration of the petitioning spouse's earning capacity, as does article 160, it was prohibited from considering the earning capacity of the petitioning spouse. This was error. It is only after all factors relevant to a discretionary award of alimony pendente lite are considered, including the earning capacity of the petitioning spouse, that alimony pendente lite may be granted to the petitioning spouse.
While the trial court did not admit, and thus did not consider, the testimony relative to Mrs. Whipple's earning capacity, the evidence is before us on proffer and we, therefore, address its decisional effect. La. Code Civ.P. art. 2164. After reviewing the proferred testimony of Mrs. Whipple and that of Miss Stephanie Chalfin (a certified rehabilitation counselor whom we find to be an expert in the field of job placement), we affirm the award of alimony pendente lite made by the trial court.
Mrs. Whipple has no work history during her marriage to Mr. Whipple. In fact, she has not been employed for approximately five years. Though she was once a cosmetologist, she is now unlicensed and apparently needs to update her training in order to renew her license. Admittedly, she has not sought employment but explained she had been involved in two automobile accidents which resulted in medical treatment and the need for further therapy. We note specifically Mrs. Whipple has two minor children from a previous marriage who reside with her. Although Mr. Whipple is not obligated to support these children, nevertheless custodial care is required and bears upon employment considerations.
Miss Chalfin testified there were several jobs available which Mrs. Whipple could perform. These involved sales in retail stores, work related to cosmetology, and unskilled clerical positions. It appears evident that at the time of the hearing Mrs. Whipple, assuming no physical impediment, could have obtained employment for the minimum wage prescribed by law. However, she is accustomed to a high standard of living and such a job would not amount to a preservation of the status quo. Insofar as is economically possible, the support afforded the claimant spouse should be consistent with the standard of living to which the parties were accustomed. As regards some of the better paying jobs allegedly *268 available at the time of the hearing, there was no assertion by Miss Chalfin that Mrs. Whipple would, in fact, obtain one simply by applying for it. Job competition is, of course, a factor to be considered. This is particularly true where there is a lack of experience in the particular field of endeavor.
Mrs. Whipple did not terminate employment in order to obtain alimony. Income production was not one of her marital roles. During the litigation period it is reasonable to allow time for her to renew her cosmetology license or to seek training in some other employment field. We do not deem it necessary for her to accept the first available job regardless of circumstances or the amount of income it will produce. In conclusion, our review of the proferred testimony does not derogate from the validity of the trial court's award nor does the amount constitute an abuse of its discretion.
The trial court fixed the amount of the expert witness fee for Stephanie Chalfin at $350.00. It was not awarded because her testimony was not deemed admissible. We must amend the judgment of the trial court by decreeing an award to her of $350.00, same to be taxed as a part of the costs of court.
Appellant contends we erred in our original opinion by stating the wife was given a Mercedes Benz automobile. Our statement in the original opinion was based upon the record before us and was not intended to be a legally conclusive determination of ownership, the issue of ownership not having been placed before us.
For the foregoing reasons, we amend the judgment appealed to the extent an expert witness fee in the amount of $350.00 is awarded to Stephanie Chalfin, same to be taxed as cost, and in all other respects the judgment is affirmed. Costs are to be assessed upon final determination of issues still pending in the trial court.
AMENDED AND, AS AMENDED, AFFIRMED.
SHORTESS, J., concurs and assigns reasons.
SHORTESS, Judge, concurring.
I respectfully concur.
The majority opinion states:
"It is only after all factors relevant to a discretionary award of alimony pendente lite are considered, including the earning capacity of the petitioning spouse, that alimony pendente lite may be granted to the petitioning spouse."
I do not feel, however, that they intend to compel the consideration of earning capacity in every determination of alimony pendente lite. I believe the trial judge should assess the work-history of the spouses in determining whether earning capacity need be evaluated. If the work-history reveals that the parties have assigned one spouse the role of homemaker and/or child-rearer, then that spouse's earning capacity should not be considered, as it might result in the violation of the status quo.
However, earning capacity is a proper factor when during the marriage both spouses have been employed, when neither spouse has been employed, or when a claimant spouse has been regularly employed during the marriage, but happens to be unemployed at the time of trial. A spouse should not be allowed to abuse the system by ceasing to work, after having worked during the marriage, in order to obtain or increase alimony pendente lite. Earning capacity should only be considered in light of the intent of La.C.C. art. 148, which is to maintain the status quo.
Accordingly, I concur.
NOTES
[1] Cf. Harrington v. Campbell, 413 So.2d 297 (La.App. 3d Cir.1982), which follows Arrendell. However, Morris v. Morris, 413 So.2d 285 (La. App. 3d Cir.1982), indicates Smith (which is based upon LSA-C.C. art. 119, because of the then unconstitutional status of art. 148), is still good law, apparently notwithstanding the fact that a new version of art. 148 which passes constitutional muster has not been enacted.
[1] Cf. Desormeaux v. Brignac, 408 So.2d 32 (La. App. 3d Cir.1981).