HAMLIN, Justice.
Henry Clyde Stokes was injured on June 21, 1967, while in the course and scope of his employment with Earl Gibbon Transport, Inc., and he died as a result thereof the following day.
At the time of his death Stokes resided and maintained a household with one Willie Mae Weber to whom he was not married, he, at the time, being the husband of Adlay Jones Stokes. But living in the Stokes home were the four legitimate, minor children born of the marriage between Stokes and Adlay Jones Stokes, and one unacknowledged illegitimate minor born of the relationship of Stokes and Willie Mae Weber. A second illegitimate child of the latter and Stokes was born posthumously.
*427 On June 29, 1967 a suit was filed for workmen’s compensation benefits on behalf of Stokes’ four legitimate children. By answer and reconventional demand Stokes’ employer and its insurer, Aetna Casualty and Surety Company, converted the suit into a concursus proceeding, they inter-pleading Willie Mae Weber who was ordered to appear and assert any claims she might have in behalf of the illegitimate minor child of Stokes. (Hereafter, reference to the “employer” will include both it and its insurer.)
Willie Mae Weber appeared in the concursus proceeding and claimed compensation benefits for her then living minor child.
Because the accident which caused the death of Stokes occurred under circumstances giving rise to a third party claim, a tort action was brought on behalf of the legitimate children against the alleged third party tort feasor and, subsequently, recovery was had for them (by compromise and settlement) of an amount in excess of the maximum workmen’s compensation that they could recover for the death of their father.
Later, the legitimate children dismissed their compensation demand, inasmuch as the amount thereof would be included in the tort settlement and payable to the employer (see LRS 23:1101-23:1103). And the defendant employer filed an amended pleading in the concursus proceeding asserting the extinguishment of the compensation claim by reason of the tort settlement, it praying that judgment be rendered rejecting the demands of all parties.
Willie Mae Weber did not seek damages from the tort feasor. However, she filed a supplemental pleading in the concursus proceeding claiming benefits for her born child and for the illegitimate posthumous offspring.
The case was tried on a stipulation of facts setting forth the circumstances heretofore shown.
The district court decreed that the legitimate children, there being four in number, were entitled to the maximum amount of compensation then allowable ($35 per week for four hundred weeks) and that this had been settled in the tort action. It further held that there be judgment in favor of Willie Mae Weber for the use and benefit of her illegitimate children for any compensation benefits which might he remaining and unused by the four legitimate children.
Willie Mae Weber appealed. The judgment was affirmed. La.App., 232 So.2d 328. We granted certiorari. 255 La. 804, 233 So.2d 247.
The first question posed by the facts of this case is whether the law of this state, which relegates a decedent’s unacknowledged illegitimate, dependent children *429 (members of his family) to a position inferior to that of his legitimate (or legally acknowledged) dependent children — so that when (as in this case) the latter are entitled to all of the allowable compensation and the unacknowledged, illegitimate are entitled to none of it — discriminates against the illegitimates, as being violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States — although in the absence of legitimates (or a sufficiently small number of them) the unacknowledged illegitimate children would have a right to recover. (See LRS 23:1021, 23:1231, 23:1232, 23:1252 and 23:1253, and Thompson v. Vestal Lumber and Manufacturing Company, 208 La. 83, 22 So.2d 842.)
In ttrging that the compensation law is unconstitutional, Willie Mae Weber (mother of the illegitimate children) relies principally on the decisions (or the rationale thereof) in Levy v. Louisiana through The Charity Hospital of Lousiana at New Orleans Board of Administrators et al., 391 U. S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 and its companion holding in Glona v. American Guarantee and Liability Insurance Company et al., 391 U.S. 73, 88 S.Ct. 1515, 20 L. Ed.2d 441.
The Levy suit, brought in a Lousiana district court, was on behalf of several illegitimate children for damages (not workmen’s compensation) for the wrongful death of their mother. The Glona tort action was filed by a mother in Federal District Court for the wrongful death of her illegitimate child. Both cases were based on Article 2315 of the Louisiana Civil Code which, by interpretation of this court, permits recovery for wrongful death by legitimate relatives, but not when the relationship is illegitimate. The Court of Appeal, Fourth Circuit, denied recovery to the Levy offspring (192 So.2d 193) and we denied certiorari (250 La. 25, 193 So.2d 530). The same result was reached in the Federal Court of Appeal (Fifth Circuit) in Glona, 379 F.2d 545. Thereafter, both cases were argued together in the United States Supreme Court, and were reversed.
In each of those cases it was found by the lower court that the Louisiana law involved denies recovery for an illegitimate child, whether acknowledged or not (or to such child’s parents), even though no legitimate children or other heirs standing in a legal family relationship survived to claim damages in the tort action established by Civil Code Article 2315. In other words, all such persons were absolutely excluded from the right to claim for the wrongful death. As the United States Supreme Court said in Levy, insofar as that action is concerned, they are considered as .“non persons”.
Following a rendition of those judgments, a contention such as is made by *431 Willie Mae Weber here (and based on Levy and Glona), was offered in Succession of Vincent, La.App., 229 So.2d 449, where an illegitimate, formally acknowledge child sought to share in her father’s succession on the same basis as his legitimate child. She stated that “the cited Louisiana inheritance statutes unconstitutionally violate equal protection and due process guarantees, since they deny an illegitimate child the right to inherit solely because of the illegitimacy.” [We might observe here that the laws referred to do not deny the acknowledged illegitimate child (as it was there) the right to inherit. They merely place the right of inheritance behind that of the legitimate child (and other legal relatives). See Articles 219, 202 and 206 of the Louisiana Revised Civil Code. To such extent those laws are similar to the compensation statute with which we are presently dealing, except that the latter places legally acknowledged illegitimate children on a par with legitimate children and puts unacknowledged, illegitimate children in an inferior classification, so that they can recover only if there are no persons in the more favored classifications who are entitled to the maximum compensation.]
In Succession of Vincent, supra, in declining to accept the alleged rationale of Levy and Glona as being applicable to such distinctions between legitimate and illegitimate relatives in all cases, the Louisiana Court of Appeal said: “This reasoning is persuasive. Nevertheless, we do not accept the holding of Levy and Glona as deciding more than that wrongful death enactments create an unreasonable exemption from tort liability by allowing illegitimacy to bar recovery of tort damages otherwise due. * * * ” (emphasis ours)
We denied certiorari, stating that the judgment was correct. 255 La. 480, 231 So.2d 395.
We are of the opinion that the statement by the Louisiana Court of Appeal correctly sets forth the limited rationale of the federal opinions. Thus, in Levy the United States Supreme Court particularly observed that “In applying the Equal Protection Clause to social and economic legislation, we give great latitude to the legislature in making classifications.” And, although the latter court did refer to the “intimate, filial relationship between a child and his own mother”, it followed such reference with these observations: “ * * * When the child’s claim of damages for loss of his mother is in issue, why, in terms of ‘equal protection,’ should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription . under the Selective Service *433 Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?
“Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. * * * ” (emphasis ours)
Again, in Glona the court stated: “ * * * A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tortfeasors. * * * ” (emphasis ours)
There is nothing whatsoever in either of those United States Supreme -Court opinions that would compel the conclusion in compensation cases that -a state may not make a distinction between legitimate and illegitimate children which would protect legitimate family relationships but permit recovery by illegitimates in the absence of the former. The circumstances of those decisions did not require a holding on the issue of the right of an illegitimate- child as opposed to a legitimate one, and we do not find anything in the language of the court which would bear on such a contest.
Unlike Louisiana Civil Code Article 2315, our compensation law does not treat illegitimate children as “non persons” (as the United States Supreme Court in Levy held that the Article does); the acknowledged illegitimate child is placed on a par with legitimate children; the unacknowledged illegitimate child is not denied a right to recover compensation, he being merely relegated to a less favorable position as are other dependent relatives such as parents; no “wrong” has been inflicted on the deceased father by the employer from whom compensation is here sought; and no tort feasor goes free because of the law.
For ourselves, we find nothing invidious in the distinction made in the compensation statute which would protect such legally recognized family relationships, anymore than the preference given legitimate dependent children (even illegitimate ones when they are duly acknowledged) over dependent parents. We think that such classification is permitted to the state legislature in dealing with social and economic problems, and that the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution creates no barrier to it as contained in such statute.
Because of this conclusion that they are inapplicable, we find it unnecessary to determine whether the Levy and Glona decisions would be retroactively applied to the substantive law of this state, such having been the basis for the Court of Appeal decision in this cause.
For the reasons assigned the judgment of the Court of Appeal is affirmed.