LEMMON, Judge.
First Commerce Corporation (FCC), a corporation which owns virtually all of the shares of First National Bank of Commerce in New Orleans, derives income from dividends on that national bank stock, as well as from other sources. In this action to collect Louisiana state income tax for 1973 and 1974 on FCC’s income from its national bank shares, FCC resists payment on the grounds (1) that national bank dividends, although then taxable by a state, had not been subjected to taxation by the Louisiana Legislature after Congress removed a previous obstacle to such taxation (notwithstanding R.S. 47:42 A’s long-standing taxation of “dividends”); (2) that all of FCC’s own income was exempted by R.S. 47:8 from taxation; and (3) that equal protection of the law requires treating FCC like corporations exempted by R.S. 47:8. We disagree on all issues, and we therefore reverse the trial court’s judgment.
I
By R.S. 47:42 A and its forebears, Louisiana has since 1934 imposed a tax on income, including income from “dividends”. But Louisiana had since 1878 expressly imposed an ad valorem tax on the shares of national banks “doing a banking business in this state” (see R.S. 47:1967), and federal law *469 (12 U.S.C. § 548 and its forebears) prohibited a state from imposing both ad valorem and income taxation.[1] Louisiana’s tax collector therefore opined in 1935 that national bank dividends were exempt from state income tax notwithstanding the state’s taxation of “dividends”.
Dividends of state banks, on the contrary, were taxed as “dividends” until 1966 when R.S. 47:8 was enacted, limiting taxation of state bank shareholders to the taxes payable by national bank shareholders.[2]
12 U.S.C. § 548 was amended in 1969 to provide that, for federal and state tax purposes after January 1, 1973, “a national bank shall be treated as a bank organized and existing under the laws of the State” of its principal office.[3] Louisiana’s Legislature passed no new statute in response to the federal change, but state tax officials took the position that, after January 1, 1973, “dividends” taxed by Louisiana’s existing statute included dividends from national bank shares.
FCC argues that the Louisiana Legislature did not intend to include national bank dividends among “dividends” taxed when R.S. 47:42 A was first enacted, because such dividends were then exempt by operation of federal law from state income tax. On this premise FCC further contends that taxation of national bank dividends, after the exemption was removed by amendment of federal law in 1973, required an Act of the Legislature, rather than the simple administrative application of an Act long in existence.[4]
The broad, inclusive definition of gross income in R.S. 47:42 A evidently intended to tax all that it could, including among “dividends” those from state and national banks.[5] Furthermore, the deliberate wording of R.S. 47:8, enacted in 1966 to end the unfair and unequal treatment of state bank shareholders, provides not that state bank dividends are not included in “dividends”, nor even that they are exempt, but rather that state banks and their shareholders “shall be subject to the payment of all taxes *470 of the State of Louisiana ... in the same manner as national banking corporations doing business in Louisiana and their shareholders are taxed by the State of Louisiana . . . under the laws and regulations of the United States of America and the State of Louisiana.”[6] The Louisiana Legislature thus yielded on collection of taxes from state banks only to the extent that federal law prohibited the collection of more than one tax in respect to national banks and their shareholders.
It is reasonable to conclude that the Louisiana Legislature originally intended to tax all the income its taxing power could reach. Indeed, it is unthinkable that the Louisiana Legislature in taxing “dividends” intended to tax state bank dividends but not national bank dividends, notwithstanding that it may then have recognized (and by its 1966 enactment of R.S. 47:8 did recognize) that federal law prevented collecting the tax on national bank dividends. The Louisiana situation from 1966 to 1973 was that the Legislature imposed a tax on all dividends, but since federal law exempted national bank dividends, the Louisiana Legislature, on the basis of fundamental fairness and without ever withdrawing its taxation of “dividends”, provided that state banks be taxed no more than national banks. Thus, the Louisiana Legislature’s express taxation of “dividends” was simply suspended as to both national and state bank dividends exclusively because of a federal law obstacle. When that obstacle was removed, the suspension of Louisiana’s taxation of bank dividends ended, effective January 1, 1973.[7] Presumably, every other recipient of national bank dividends in the state (with one stipulated exception) has paid Louisiana state income tax in respect to those dividends. So should FCC, unless its own income is exempt from taxation under R.S. 47:8.
II
R.S. 47:8 affords no exemption to FCC because, as is stipulated, FCC’s income is not “derived solely” from its national bank shares.[8]
The declared purpose of R.S. 47:8 (which is applicable to all forms of state taxation) was to put state banks and bank stock holding corporations and their shareholders on the same footing for all tax purposes with national banks and their shareholders.[9] But the purpose cannot then have been to preserve from income tax the pure bank holding corporation the statute describes, because such a corporation would already owe no income tax: all its income was already tax-free because it was derived solely from non-taxed dividends from bank shares and from tax-exempt securities. The inclusion of holding companies pre *471 served them from other taxes, but it was their shareholders who required exemption from state income tax. Without R.S. 47:8, non-taxable bank dividends would have become taxable holding company dividends when passed from the bank through the holding company to the ultimate shareholders.
As surely as the Legislature by R.S. 47:8 intended to avoid that consequence, it did not intend to allow all corporations to escape income and other taxation by buying a share of bank stock. A line had to be drawn and it was drawn, clearly and unmistakably: to achieve the advantageous tax status of a national bank, the corporation’s income had to be “derived solely from banking corporations and securities exempt from [state] taxation.” A bank holding company could own bank shares, bank accounts and tax-exempt bonds, but could derive income from no other source. FCC chose to derive income from other sources and thus has crossed the line dividing corporations that own bank stock into those that pay and those that do not pay income tax.
Ill
FCC argues that it is denied equal protection of the law by being categorized with all other shareholders rather than with Hibernia Corporation, which, it is stipulated, was accorded the tax status of a bank because its income is “derived solely” from its shares of Hibernia National Bank.
This complaint is like that of a corporation denied federal Subchapter S tax treatment because it has one more shareholder than permitted by 26 U.S.C. § 1372. As we have already observed, a legislative body must draw a line at some point. The federal Subchapter S line is drawn at 15 shareholders; Louisiana’s bank holding company line is drawn at companies who do nothing but hold bank shares or otherwise derive income from banks (and tax-exempt securities). The Louisiana law allows a company that is a pure conduit to treat its income as that of its shareholders, much as any law might allow a nominee or agent to attribute his apparent income to its beneficial owner. By doing so, the Louisiana law does not discriminate unreasonably against another company (Commerce) which is part conduit and part independent commercial enterprise.
Perhaps it might have been as reasonable for Louisiana to allow every corporation that holds any stock in any other corporation to treat income from the stock it holds as income of the holder’s own shareholders. But the constitutional test is not whether the legislative categorization could not be improved upon.
The test is only whether the statutory classification is “supported by [some] rational basis reasonably related to the governmental interest sought to be advanced”, Succession of Robins, La., 349 So.2d 276, 280 (1977), and bears “some rational relationship to a legitimate state purpose”, (Weber v. Aetna Cas. & S. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). The facilitating of bank holding companies, to afford greater banking service flexibility and capacity, without any threat that concentrated banking power might then take over some other area of commerce or industry, is a legitimate state purpose served reasonably by the statute.
The judgment of the trial court is reversed, and there is judgment for plaintiff in the stipulated amount of $133,047.80 for 1973, and $98,736.96 for 1974, with 12% interest from date due until paid, with all costs.

REVERSED AND RENDERED

. Prior to its 1969 amendment, 12 U.S.C. § 548 provided:
“The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:
“1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others ....

. State banks’ own income (like national banks’ own income) was exempted from income tax, if another tax was paid on the shares by R.S. 47:121(2) and its forebears, in effect since 1935. R.S. 47:121(2) provides:
“Mutual savings banks, national banking corporations and banking corporations organized under the laws of the State of Louisiana who pay a tax for their shareholders or whose shareholders pay a tax on their shares of stock under other laws of this state, and building and loan associations”.

. After the 1969 amendment, 12 U.S.C. § 548 provided:
“For the purpose of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located”.

. Except for the history of federal limitations on state taxation of national banks, reviewed in First Agricultural Nat. Bank v. State Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), there could be no argument that R.S. 47:42 A’s taxation of “dividends” does not tax national bank dividends, and R.S. 47:8’s protection of state banks from taxes higher than those allowable on national banks perhaps would not exist.

. R.S. 47:42 A defines gross income as follows:
“ ‘Gross income’ includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealing in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.”

. R.S. 47:8 provides:
“Banking corporations organized under the laws of Louisiana and other corporations whose income is derived solely from banking corporations and from securities exempt from taxation by the State of Louisiana and shareholders of such banking corporations shall be subject to the payment of all taxes of the State of Louisiana and any subdivision thereof in the same manner as national banking corporations doing business in Louisiana and their shareholders are taxed by the State of Louisiana and any subdivision thereof under the laws and regulations of the United States of America and the State of Louisiana, and in no other manner.”

. FCC also argues from R.S. 47:1511 that the Collector’s post-1972 interpretation of the tax law to tax bank dividends was invalid for lack of notice. However, it was not the Collector, but the Congress who, by removing the federal impediment, allowed the 1934 state law its force.

. A semantic problem is that R.S. 47:121(2) only exempts from income taxation national banks “who pay a tax for their shareholders or whose shareholders pay a tax on their shares of stock under other laws of this state ....” R.S. 47:1967-1970 imposes a tax on the shares of banks but not on the shares of corporations which own bank shares. Probably, nevertheless, R.S. 47:8 must be interpreted to give a pure holding company and its shareholders the same tax status as any national bank and its shareholders because every national bank in Louisiana paid share taxes.

. The language of the Title of the Act, “shareholders of such banking and other corporations”, is broader than the language of the body of the Act, “shareholders of such banking corporations”.