CUTRER, Judge.
The issue presented by this appeal is the constitutionality of LSA-C.C. art. 204 which provides as follows:

“Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception; however, such acknowledgment may be made if the parents should contract a legal marriage with each other.”

On December 10,1976, Milton Batiste executed an instrument entitled:

“ACKNOWLEDGEMENT OF ILLEGITIMATE CHILDREN BY MILTON BATISTE TO ALITERETA A. BATISTE, CORLISS L. BATISTE & JENNIFER JONES.”

The instrument was in proper form as it was executed before a notary and two witnesses in compliance with LSA-C.C. art. 203.[1] In the instrument Batiste stated that *18 he was the father of Barbara Jones’ three children, Alitereta Batiste, Corliss Batiste and Jennifer Jones. He further stated that:

“[t]hat it is the appearer’s intention to acknowledge and he does hereby so acknowledge said children, that he is now married and that said BARBARA JONES. 1401 Hardtner Street, the children's mother, is unmarried and that the parents, at the time of conception, could not have contracted marriaere.

“The appearer further states that [it] is his intention and obligation to support his acknowledged illegitimate children and he does by these presence hereby agree that he will pay towards the support of said children an amount of ONE HUNDRED SIXTY AND NO/lOO ($160.00) DOLLARS per month until the youngest child, JENNIFER JONES, has reached the age of majority; he further states that it is his wish to continue to keep in force and effect the life insurance policies on CORLISS BATISTE and ALITERE-TA BATISTE and JENNIFER JONES in the amount of TWO THOUSAND AND NO/lOO ($2,000.00) DOLLARS each with the National Life and Accident Insurance Company and he further agrees to make BARBARA JONES the irrevocable beneficiary of said policies; he further agrees that he will pay all reasonable medical expenses incurred by BARBARA JONES for medical treatment of ALITERETA BATISTE, CORLISS BATISTE and JENNIFER JONES until they reach their respective ages of majority; he further agrees that he will not oppose BARBARA JONES’S petition to have their daughter, JENNIFER JONES, name changed to JENNIFER BATISTE.” (Emphasis ours..)
On July 17,1981, Barbara Jones filed suit against Batiste alleging that since September 8, 1980, Batiste had failed to comply with the provisions of the instrument. The petition prayed for $7,020.00 arrearages in child support, $2,000.00 for unpaid insurance premiums for life policies and $1,500.00 for past medical expenses.
Petitioner also pleaded that C.C. art. 204 was unconstitutional and that the acknowledgment was valid.
In the alternative, petitioner pleaded that Batiste had acknowledged the children and that the children were entitled to child support as they were in necessitous circumstances.
After service was made and the legal delays lapsed without an answer having been filed by Batiste, a preliminary default was entered. The suit then proceeded to confirmation.
The court dismissed the suit on the ground that C.C. art. 204 prohibited the acknowledgment by Batiste as he and Barbara Jones were incapable of marriage at the time of conception. The trial court concluded that the acknowledgment was invalid.
As to the constitutional issue the trial court stated that it did not feel that it should rule on the constitutionality of art. 204 as it had been repealed by Act 607 of 1979.
From the dismissal of the suit, Barbara appeals contending art. 204 is unconstitutional and that the acknowledgment of the children by Batiste is valid.
The legal issue is whether LSA-C.C. art. 204 unreasonably discriminates against illegitimate children because of their birth, in violation of our state constitution, when such statute prohibits the acknowledgment of a child that was conceived at a time when the father and mother were incapable of entering into marriage. This code article legislatively classified adultery-conceived il-legitimates as being incapable of being acknowledged by their natural parents when, on the other hand, such prohibition did not exist as to other illegitimates that were not categorized as adulterous.
*19 Article I, Section 3 of the Louisiana Constitution of 1974 prohibits laws which “unreasonably discriminate against a person because of [his] birth...” This constitutional prohibition includes ¿within its scope unreasonable discrimination against persons because of illegitimacy. Succession of Robins, 349 So.2d 276 (La.1977).
Robins further states that:
“The equal protection guarantee of the constitution essentially requires that state laws affect alike all persons and interests similarly situated. Nevertheless, differences in legislative treatment may validly be accorded to persons or interests classified differently, provided there be shown a rational basis for the differentiation which is reasonably related to a legitimate governmental purpose.

“See: Williams v. Williams, 331 So.2d 438 (La.1976); State v. Barton, 315 So.2d 289 (La.1975); Petition of Sewerage & Water Bd. of New Orleans, 257 La. 716, 243 So.2d 809, 813 (1971); Hargrave, the Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 6-10 (1974). See also: Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).”

The question then arises as to what valid state purpose was rationally served by a legislative prohibition of the acknowledgment of adultery-conceived illegitimate children.
It may be argued that the state purpose said to be served was the preservation of the marriage by penalizing adulteries. This argument was put at rest in the Succession of Robins, supra. In that case LSA-C.C. art. 1488 was under constitutional attack. This article prohibited natural fathers and mothers from disposing of property in favor of adultery-conceived children. In the court’s discussion of whether such discrimination served a valid state purpose, the court stated as follows:

“We find no rational basis for this hence-invidious discrimination against il-legitimates solely because their birth resulted from an adultery.

“Assuming that adulteries are a social evil that endanger the sanctity of marriages, we note that the legislature has not seen fit to provide sanctions against the adulterous parents-only against their children. ‘ * * * [VJisiting this condemnation [by society “of irresponsible liaisons beyond the bonds of marriage”] on the head of an infant is illogical and unjust.... Obviously, no child is responsible for this birth and penalizing the child is an ineffectual-as well as unjust-way of deterring the parent.’ Weber v. Aetna Casualty & Surety Company, 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972).

[8]

The court concluded as follows:

“Without reaching other contentions of invidious discrimination against adulterous children solely because of their birth, it suffices in deciding the present litigation that we affirm the trial court’s holding that Article 1488, by denying adulterous children the right to receive gifts or legacies intended for them by their parent, offends our state constitution’s prohibition against unreasonable discrimination against persons because, of their birth. This drastic penalty affecting only illegitimates proven to be conceived in adultery is not shown to be supported by any rational basis reasonably related to the governmental interest sought to be advanced by it. In similar context, the United States Supreme Court has observed: ‘ * * * We have expressly considered and rejected the argument that a 
*20
State may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships.’ Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 1464-65, 52 L.Ed.2d 31 (1977).”

Also, we point out that the state in this case has divested itself of any interest in the prohibition enunciated in C.C. art. 204. That article was expressly repealed by Act 607 of 1979.
We conclude that LSA-C.C. art. .204 was unconstitutional as it created an invidious discrimination which is barred by our state constitution. Having come to this conclusion we then must decide whether this declaration of unconstitutionality is retroactive and, if so, to what extent.
In the case of Succession of Brown, 388 So.2d 1151 (La.1980), the court held that C.C. art. 919[2] denied equal protection to illegitimates in violation of Article I § 3 of the 1974 Louisiana Constitution and the United States Constitution. Brown followed Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
In the very recent case of Succession of Clivens, 426 So.2d 585 (La.1983), the court held that the “declaration of unconstitutionality of La.C.C. art. 919 in the Succession of Brown is retroactive to January 1, 1975, the effective date of the 1974 Louisiana Constitution.”
Following the reasoning and rationale of Succession of Clivens, we hold that the declaration herein, that C.C. art. 204 is unconstitutional, is retroactive to January 1,1975, the effective date of the 1974 Louisiana Constitution.
The prohibition of art. 204 was in effect when this acknowledgment was executed on December 10, 1976. Having concluded that the unconstitutionality of art. 204 is retroactive to January 1, 1975, the ruling herein applies to art. 204 as it stood when this acknowledgment was executed.
We therefore hold that the acknowledgment by Batiste of his three children born to Barbara Jones is valid. The trial court erred when it dismissed plaintiff’s suit on the ground that art. 204 prohibited the acknowledgment judgment. The judgment will be reversed and the suit remanded for further proceedings.
For the reasons assigned, the judgment of the trial court is reversed. The suit is remanded for further proceedings according to the views expressed herein and according to law. Costs of this appeal are assessed against Batiste-appellee.
REVERSED AND REMANDED.

. LSA-C.C. art. 203 provides:
“The acknowledgment of an illegitimate child shall be made by a declaration executed before *18 a notary public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.”

 In Weber, the United States Supreme Court (reversing our decision at 157 La. 424, 242 So.2d 567 (1970)) invalidated a provision of the Louisiana workmen’s compensation act as offending the federal Equal Protection Clause of the Fourteenth Amendment. Our statutory provision prevented an unacknowledged illegitimate child from receiving dependency benefits available to acknowledged illegitimates, as well as to legitimate children. In doing so, the court also noted that article 204 of our Civil Code prevents a father from acknowledging his illegitimate child, if adulterous (as was the Weber claimant), and commented: ‘The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them.' 406 U.S. 171, 92 S.Ct. 1404.”

. LSA-C.C. art. 919 provides:
“Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants nor ascendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State.
“In all other cases, they can only bring an action against their natural father or his heirs for alimony, the amount of which shall be determined, as directed in the title: Of Father and Child.”
This article was later repealed by Article 919 of 1981, Section 3.